# Louisville & Nashville Railroad Co. v. Jones, Admr.

*Action against Railroad Company to recover Damages for alleged Negligent Killing of Employee.*

1. *Action for damages for killing employee; sufficiency of complaint.*—In an action against a railroad company by the administrator of a deceased employee to recover damages for the death of the plaintiff's intestate, which was caused by a car falling upon the intestate while he was assisting in placing it upon the track, a count of the complaint which bases the recovery on the negligence of one to whom the defendant had entrusted superintendence, in that said person "negligently caused or allowed the use of means or appliances in or about attempting to get said car on said rails, which would likely cause or allow said car to fall," states a sufficient cause of action.

2. *Same; same.*—In such a case, a count of the complaint which counts upon the negligence of one to whom superintendence was entrusted by the defendant, in that said person negli-

gently "caused or allowed the attempt to get said car upon said rails without proper appliances," states a sufficient cause of action.

3. *Same; same.*—In such a case, a count of the complaint, which attempts to present a case under subdivision one of section 1749 of the Code, and alleges that there was a defect in the condition of the ways, works, machinery or plant connected with or used in the business of the defendant, in that the "appliances used by defendant in or about attempting to get said car upon said rails were not proper and sufficient for that purpose," does not state a cause of action, and is subject to demurrer.

4. *Same; measure of damages.*—In an action against a railroad company by an administrator, to recover damages for the alleged negligent killing of the plaintiff's intestate by the defendant, the damages recoverable are to be measured by the pecuniary value of the life of the employee to his next of kin, resulting either from a relation of dependency, or from the distribution of such estate as it may be inferred from the evidence he would have earned and saved but for his untimely death.

5. *Same; same; admissibility of evidence.*—In an action by an administrator against a railroad company to recover damages for the alleged negligent killing of the plaintiff's intestate, where it is shown that the intestate at the time of his death was unmarried and was 22 or 23 years old, and was sober and frugal, the fact that the intestate's mother was a widow and stood in the relation of dependency to the intestate, is relevant and admissible in evidence.

6. *Same; admissibility of evidence.*—In such an action it is relevant and competent to introduce testimony to show the decedent's experience in railroading; such evidence being relevant as to the measure of damages by way of showing the earning capacity, and also on the question arising under the defense of contributory negligence.

7. *Same; same.*—In an action against a railroad company to recover damages for the alleged negligent killing of plaintiff's intestate, who was, at the time of the accident, in the employment of the defendant, where it is shown that the injuries were sustained while the plaintiff's intestate was assisting in placing a derailed car back upon the track, and that in order to do this jack screws were being used, it is competent to show by a witness who testified that he had for ten years worked upon a section of a railroad, the efficacy of jack screws in an effort to place a derailed car back upon the track.

[Louisville & Nashville Railroad Co. v. Jones, Admr.]

8. *Action against railroad company; charge as to appliances being used by well regulated companies.*—While the fitness of railroad appliances for special usage may be tested by what is shown to be the custom on well regulated roads, with respect to such uses under like circumstances, the practice or custom of a few well regulated companies does not have that effect as a conclusion of law; and, therefore, in an action against a railroad company to recover for personal injuries, where one of the issues involved was whether the appliances used at the time of the accident were suitable for the especial use to which they were put, charges which propose to make a standard test of the fitness of such appliances by the usage of eight companies, are invasive of the province of the jury and properly refused.

9. *Same; same.*—In an action by an administrator against a railroad company to recover damages for the alleged negligent killing of plaintiff's intestate, who was killed while assisting in putting a derailed car back upon the track where the negligence complained of was that of the superintendent in charge of such work used jack screws to support the car which was being lifted, and that such appliances were not suitable for the use to which they were put, charges which withdraw from the jury the question of whether there was negligent superintendence in omitting the use of supports in addition to the jack screws, are erroneous and properly refused.

10. *Same; charge to the jury.*—In such an action, charges which predicate the intestate's contributory negligence upon his doing certain acts with which he was charged, in a particular way, and pretermitting all inquiry as to the fact of whether or not he had knowledge that such acts on his part were negligent, are erroneous and properly refused.

11. *Same; same.*—In such a case, a charge is properly refused which instructs the jury that if they find that the plaintiff's intestate "expended all his earnings upon the support and maintenance of himself and his mother and single sister, and that he saved nothing from his earnings, and I charge you, that if you find for the plaintiff the damages assessed by you must be such sum as being put at interest at the rate of eight per cent. per annum, will each year, by taking a part of the principal and adding it to the interest, yield the amount annually expended on the mother and sister, so that the whole remaining principal at the end of the life expectancy of Walter T. Jones, added to the interest on this balance for the last year of such expectancy, will

[Louisville & Nashville Railroad Co. v. Jones, Admr.]

equal the amount annually expended on the mother and sister."

12. *Charge to the jury; properly refused when giving undue prominence to particular portion of the evidence.*—A charge to the jury which gives such undue prominence to a particular phase of the evidence favorable to the person asking said charge, as to depreciate the other evidence not so favorable, is erroneous and properly refused.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. A. A. COLEMAN.

This action was brought by S. A. Jones, as administrator of the estate of Walter T. Jones, deceased, against the appellant, the Louisville & Nashville Railroad Company, and sought to recover damages for the alleged negligent killing of the plaintiff's intestate; the damages claimed being $25,000. The complaint contained, as amended, ten counts. The plaintiff subsequently abandoned all the counts of the complaint except the first, second, third and seventh.

It was alleged in each of the counts of the complaint that the defendant was engaged in operating a railroad and that while one of the trains of the defendant was running upon one of its tracks, a car became derailed, and that while the plaintiff's intestate, who was in the service and employment of the defendant, was assisting in getting said car upon the rails of the track, the car fell upon said intestate and so injured him that he died. The allegations of negligence contained in the first, second, third and seventh counts were as follows: 1. "Plaintiff alleges that said car fell upon his intestate and he died as aforesaid by reason and as a proximate consequence of a defect in the condition of the ways, works, machinery or plant connected with or used in the said business of defendant, which said defect arose from or had not been discovered or remedied owing to the negligence of defendant or of some person in the service of defendant and intrusted by it with the duty of seeing that the said ways, works, machinery or plant were in proper condition, viz: the appliances used by defendant in or about attempting to get said car upon said rails were not proper and sufficient for that

purpose." 2. "That said car fell upon said intestate and he died as aforesaid as a proximate consequence and by reason of the negligence of a person in the service or employment of defendant who had superintenddence, entrusted to him whilst in the exercise of such superintendence, viz., defendant's conductor, to-wit, one Lee, negligently caused or allowed the use of means or appliances in or about attempting to get said car on said rails, which were likely to cause or allow said car to fall as aforesaid." 3. "Said car fell upon said intestate and he died as aforesaid as a proximate consequence and by reason of the negligence of a person in the service or employment of defendant who had superintendence intrusted to him whilst in the exercise of such superintendence, viz: defendant's section boss, to-wit, one Smith, negligently caused or allowed the use of means or appliances in or about attempting to get said car upon said rails, which were likely to cause said car to fall as aforesaid." 7. "The said car fell upon said intestate and he died as aforesaid as a proximate consequence and by reason of the negligence of a person in the service or employment of defendant who had superintendence intrusted to him whilst in the exercise of such superintendence, viz: defendant's conductor, to-wit, one Lee, negligently caused or allowed the attempt to get said car upon said rails without proper appliances."

The defendant demurred to the first count of the complaint upon the following grounds: 1. It states no cause of action against defendant. 2. Said count is indefinite in its allegations of negligence. 3. It does not appear that the appliances used in or about attempting to get said car upon the track was a part of the ways, works, machinery or plant. 4. It does not allege wherein the appliances used in getting the car on the track was defective.

To the second and third counts of the complaint the defendant demurred upon the following grounds: 1. The allegations of said complaint are vague, indefinite and uncertain. 2. The allegations of negligence in said count are indefinite. 3. Said counts present no

cause of action against defendant. 4. It is not alleged that the said superintendent knew that the appliances being used were likely to cause or allow the car to fall. 5. The allegations of negligence contained in said counts fail to show that the alleged superintendent was negligent.

To the seventh count of the complaint the defendant demurred upon the following grounds: 1. The allegation of negligence is indefinite. 2. It is not shown by the allegations of negligence that the alleged superintendent was negligent. 3. It is shown that the plaintiff's intestate was guilty of contributory negligence. 4. It is not alleged how the negligence complained of in the said count was the cause of the death of plaintiff's intestate. The demurrers to each of the first, second, third and seventh counts were overruled, and thereupon the defendant duly excepted.

The defendant filed nine pleas, the first, second and third of which were, in different words, the general issue. The fourth plea set up the contributory negligence of plaintiff, and averred that said contributory negligence consisted in deceased negligently allowing his head to be caught between truss rods and oil box.

The fifth plea likewise sets up the contributory negligence of the deceased, and avers that he was negligent in the manner in which he assisted in doing the work at the time of the accident.

The sixth plea is based on the contributory negligence of intestate, in that he negligently failed to get out of the way of the car when it fell.

The seventh plea avers, in answer to the complaint, that at the time of the accident, and when intestate undertook to assist in the work of placing the car on the track, he knew the appliances that were being used for that purpose, and that he had knowledge of the character and sufficiency of such appliances, and that at such time he knew the force of men employed in the attempt to place said car on the rails, and that he knew the sufficiency of said force for said work, and that plaintiff's intestate was guilty of proximate contributory negligence, in undertaking said work with such knowledge.

The eighth plea is not to be found in the record.

Plea number nine, in answer to the first, second, third and seventh counts, avers that at the time plaintiff's intestate undertook the work of assisting to place the derailed car on the track, he knew the appliances that were being used for that purpose, that at that time he knew their character and sufficiency, and the force of men employed, and that by undertaking to assist in said work with such knowledge, plaintiff's intestate assumed all the risks incident to said work.

The plaintiff interposed demurrers to the eighth and ninth plea. The demurrer to the eighth plea was sustained, and the one to the ninth plea was overruled. Issue was then joined on the first, second, third, fourth, fifth, sixth and ninth pleas of defendant.

Upon the trial of the cause the following facts were disclosed:

Plaintiff's intestate, who was employed by the defendant railroad company in the capacity of flagman on one of its freight trains, was killed near Sloss's on the evening of August 13th, 1897. The scene of the accident was a spur track, leading from defendant's line to an ore mile, said track being owned and operated by the defendant.

An empty gondola car had become derailed early in the day, and Lee, the conductor of the train crew of which intestate was a member, and Smith, a section foreman employed by the defendant, had made efforts to get said car on the track. They first attempted to drag the car on with the engine and other cars, but in the attempt pulled the trucks from under the body of the car, and then, in order to get the car on the rails, it became necessary to use jacks and blocks. Two track or ratchet jacks were used for this purpose, intestate procuring some of the blocks from an ore tipple near by. Before the jacks and blocks were used successfully, Conductor Lee, being informed by his engineer that the water was low, left the scene of the wreck and went with his train crew, Jones among them, to Bessemer. When Lee and his crew returned from Bessemer, they found that Foreman Smith and his gang

had jacked up the hind end of the derailed car, but not high enough for them to accomplish their task. Under Lee's instructions his crew procured more blocks and finally succeeded in cribbing the hind end of the car. The jacks were then taken to the front end, and, according to the undisputed testimony, were placed on a firm foundation, and in every manner properly used. The front end of the car was then raised, intestate being present at the time, and seeing the work done, but not operating the jacks. Intestate and his fellow-workers, under orders from Conductor Lee, then proceeded to put the trucks in their proper place under the car. Jones went under the north side of the car, and after working under there some three or six minutes, and while in the act of shoving the trucks, was killed by the car falling on him.

The evidence is in conflict as to the manner in which Jones was pushing the trucks; witnesses for the plaintiff swear that he was pushing them with his hands, while defendant's evidence shows that he was pushing with his shoulders. The car fell only a short distance, but caught intestate's head between the truss rod and oil box. Intestate was removed from under the car as soon as possible after the accident.

It appears from the evidence that the track jack is in use on well regulated railroads in this country, it being shown by expert testimony that it is considered safe to jack up an empty car, of the weight shown by the evidence in this case, with a ratchet or track jack, such as was used on the evening of the accident. There is some evidence that the hydraulic jack is considered safer than the track jack, and that such a jack is in use on some of the well-regulated railroads of this country.

The record shows that plaintiff's intestate was a sober, industrious man, about 22 years of age; that his health and habits were good; and that he was earning at the time of his death about $50 per month, a portion of which sum he contributed to the support of his widowed mother, and his sister.

During the examination of S. A. Jones who was the plaintiff, he testified that he was the administrator of

the estate of Walter Jones, deceased, that Walter Jones was his brother, and that he had died as the result of the injuries sustained at the time of trying to put the car on the defendant's track as shown in the evidence. He further stated that his brother was an industrious man and had never taken a drink in his life, and that he saved a good portion of his money. He was then asked the following question: "Tell the jury whether or not his (Walter Jones') mother was dependent on him for a living?" The defendant objected to this question, because it was not a proper element of damages. The court overruled the objection, and the defendant duly excepted. The witness answered that she was. This witness further testified that his brother had never run on a railroad except the three months just before he was killed; that he had never had any experience as a track man, nor had he ever belonged to a section gang. The defendant moved to exclude the last statement of the witness as to his brother not being experienced and never having belonged to a section gang, on the ground that it was incompetent and irrelevant evidence. The court overruled the objection, and the defendant duly excepted. Against the objection and exception of the defendant, this witness testified that his brother, the said Walter Jones, had never assisted in any way, to build or repair cars and that his experience with railroading had been very limited.

G. R. Farmer, a witness for the plaintiff, testified that he had worked on section work on a railroad for ten years in succession, and had been foreman of a section gang for two different railroads, and that he had had occasion in his work on the sections of the railroads to use ratchet or track jacks. The witness was then asked to tell the jury what in his opinion "would be likely to result where a car or gondola was jacked up with two track jacks under the same end of the car." The defendant objected to this question upon the ground that the witness was not shown to be an expert, and that it was a hypothecated question, not based on the facts of the case as shown. The court overruled this objection, and the

defendant duly excepted. Upon the witness answering that the car would be likely to fall, the defendant moved to exclude said answer, and duly excepted to the court's overruling said motion. Against the objection and exception of the defendant, this witness was then allowed to testify as to the probability of a car falling jacked up by track jacks, and how such car would be likely to fall. The other facts of the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury believe the evidence in this case, they must find a verdict for the defendant." (2.) "If the jury believe the evidence in this case, they must find a verdict for the defendant under the first count of the complaint." (3.) "If the jury believe the evidence in this case, they must find a verdict for the defendant under the second count of the complaint." (4.) "If the jury believe the evidence in this case, they must find a verdict for the defendant under the third count of the complaint." (5. ) "If the jury believe the evidence in this case, they must find a verdict for the defendant under the seventh count of the complaint." (6.) "If the jury believe from the evidence that the means and appliances used by the defendant in attempting to get the car on the track are such means and appliances as are ordinarily in use by the Pennsylvania Railroad and the Erie Railroad, the Mobile & Ohio Railroad, the Kansas City, Memphis & Birmingham Railroad, the South Carolina Railroad, the Ohio & Mississippi Railroad, and the Illinois Central Railroad, engaged in like business and surrounded by like circumstances as was defendant at the time Walter T. Jones was killed, and that said railroads are well regulated railroads, then their verdict must be for the defendant, although the jury may believe the evidence of the witness who testified that such means and appliances are not in use, in like business and surrounded by like circumstances, by the Georgia Pacific Railroad, the Alabama Great Southern Railroad

and the Richmond & Danville Railroad, and that said last named three railroads are all well regulated." (7.) "If the jury believe from the evidence that the means or appliances used by defendant in or attempting to get said car upon said rails were of the same character as the means or appliances used under like circumstances by other well regulated railroad companies, then their verdict must be for the defendant." (8.) "If the jury believe from the evidence that other well regulated railroad companies use jacks like the ones used in this case for the purpose for which these were used, then their verdict must be for the defendant." (9.) "If the jury believe from the evidence that Walter T. Jones pushed said trucks with his shoulder, and that he could have pushed said trucks with his hands, and they further believe from the evidence that Walter T. Jones was killed by reason of his pushing with his shoulder and not pushing with his hands, then their verdict must be for the defendant." (10.) "If the jury believe from the evidence that there were two ways in which Walter T. Jones could have pushed the trucks, and one of these ways was a safe way and the other way was an unsafe way, and they further believe from the evidence that Walter T. Jones adopted the unsafe way, then their verdict must be for the defendant." (11.) "If you believe from the evidence that the car careened and fell because the trucks were pushed against the door or doors underneath the car, your verdict must be for the defendant." (12.) "If you believe from the evidence that the trucks were pushed against the door or door underneath the car, and that this caused the car to careen and fall, even though you might believe from the evidence that the trucks were negligently so pushed against the door or doors, you must find for the defendant." (13.) "If you believe from the evidence that Walter T. Jones, while pushing the trucks, without necessity therefor, had his head lying on the oil box with the truss rod only two or three inches above his head and that his head was caught between the oil box and truss rod and crushed, thereby causing his death, you must find for the defendant." (14.) "If

you believe from the evidence that Walter T. Jones, while pushing the trucks, through inadvertence had his head lying on the oil box with the truss rod only two or three inches above his head, and that his head was caught between the oil box and truss rod and crushed, thereby causing his death, you must find for the defendant." (15.) "If you believe from the evidence that Walter T. Jones, while pushing the trucks, through inattention had his head lying on the oil box with the truss rod only two or three inches above his head, and that his head was caught between the oil box and the truss rod and crushed, thereby causing his death, you must find for the defendant." (16.) "Under the evidence in this case, if you believe it, you must find that Walter T. Jones expended all his earnings upon the support and maintenance of himself and mother and single sister, and that he saved nothing from his earnings, and I charge you, that if you find for the plaintiff, the damages assessed by you must be such sum as being put at interest at the rate of eight per cent. per annum, will, each year, by taking a part of the principal and adding it to the interest, will yield the amount annually expended on the mother and sister, and so that the whole remaining principal at the end of the life expectancy of Walter T. Jones, added to the interest on this balance for the last year of such expectancy will equal the amount annually expended on the mother and sister." (17.) "If you believe from the evidence in this case that Walter T. Jones earned upon an average for the last twelve or thirteen months of his life $34 per month, and that he expended in his own support and for and on his account, upon an average, during such time, twenty-four and 50-100 dollars per month, and that he expended during such time in the support and maintenance of his mother and sister nine and 50-100 dollars, upon an average, per month, and after making such expenditures for and on his own account, and after making such expenditures for and on behalf of his mother and sister he did not save from his earnings during such time, anything, I charge you that if you find for the plaintiff the damages to be assessed by you must be such sum as being put to interest at eight per cent.

per annum, will, each year, by taking a part of the principal and adding it to the interest, yield $114., and so that the whole remaining principal at the end of the life expectancy of Walter T. Jones, added to the interest on this balance for that year will equal one hundred and fourteen ($114) dollars.

There were verdict and judgment for the plaintiff, assessing his damages at $3,750. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

THOS. G. & CHAS. P. JONES and ALEX. C. BIRCH, for appellant.—The first count of the complaint was subject to demurrer. It was impossible for the defendant to know what state of facts it would be necessary for it to omit or what evidence it would be necessary for it to rebut.—*Meadows v. Railroad Co.*, 73 Ala. 356; *Ins. Co. v. Moog*, 78 Ala. 284; *Railway Co. v. Chewning*, 93 Ala. 24; *M. & O. R. R. Co. v. George*, 94 Ala. 199.

The demurrers to the second and third counts should have been sustained.. What has been said above as to the demurrers to the first count is largely applicable to the demurrers to these counts. It does not appear from the allegations of either the second or third counts, in what the negligence consisted, nor in what respect or particular the appliances used were defective, improper or insufficient, nor is it stated what appliances were used. It is not alleged that the alleged defects were not discovered owing to the negligence of defendant, etc. These two counts are a combination of a cause of action based on the defective condition, etc., and on the negligence of a person to whom superintendence was intrusted, and it was bad. There is no allegation that the defendant had knowledge of the defect or was in fault in not discovering it.—*Columbus & Western R. R. Co. v. Bradford*, 86 Ala. 574; *Seaboard Mftg. Co. v. Woodson*, 94 Ala. 141; see also 5th Rap. & Mack's Ry. Dig., 98; *A. P. & C. R. R. Co. v. Holt*, 11 Am. & Eng. R. R. Cases, 206; *James v. R. & D. R. R. Co.*, 92 Ala. 221; *Ala. Min. R. R. Co. v. Jones*, 121 Ala. 113.

It was not competent for the plaintiff to show that decedent's mother was dependent upon him for a living. *James v. R .R. Co.*, 92 Ala. 221; *Ala. Min. R. R. Co. v. Jones*, 121 Ala. 113. If the plaintiff was entitled to recover under the case made out by him he was entitled to only compensatory damages.—*A. G .S. R. R. Co. v. Bailey*, 112 Ala. 167; *L. & N. R. R. Co. v. Binion*, 18 So. Rep. 75; *Railroad Co. v. Roy*, 102 U. S. 460; *Driess v. Friederich*, 57 Tex. 70; *Chicago v. O'Breenoa*, 65 Ill. 160; *Kansas Pac. R. R. Co. v. Pointer*, 9 Kan. 620; *Krengziger v. R. R. Co.*, 73 Wis. 158; *Stockton v. Fry*, 4 Gill. (Md.) 406.

Under the Employee's Liability Act, proof of the injury does not raise a presumption of negligence. *Mary Lee C. & R. R. Co. v. Chambliss*, 97 Ala. 171. On general propositions see *McDonald v. Montgomery Street Ry. Co.*, 110 Ala. 161.

The railroad company is under the duty of providing and keeping suitable machinery; but it is not required to use extraordinary care, and it is not an absolute insurer.—*Wilson v. L. & N. R. R. Co.*, 85 Ala. 269; *L. & N. R .R. Co. v. Hall*, 87 Ala. 708; *K. C. M. & B. v. Burton*, 97 Ala. 240; *Schlaff v. L. & N. R. R. Co.*, 100 Ala. 377; *R. & D. R. R. Co. v. Bivins*, 103 Ala. 142; *L. & N. R. R. Co. v. Stutts*, 105 Ala. 368.

There is no duty on the defendant to provide the latest inventions, but it is sufficient if it uses a reasonably safe apparatus, which is used by other well-regulated railroads.—*L. & N. R. R. Co. v. Allen*, 78 Ala. 494; *L. & N. R. R. Co. v. Hall*, 87 Ala. 708.

Where the evidence in a cause leaves a disputed fact in doubt and uncertainty, the issue must be found against the party on whom the burden rests.—*Vandeventer v. Ford*, 60 Ala. 610; *Wilcox v. Henderson*, 64 Ala. 535; *Life Assur. Co. v. Neville*, 72 Ala. 517; *Garrett v. Garrett*, 64 Ala. 263; *R. R. Co. v. Frazier*, 92 Ala. 45.

BOWMAN & HARSH, *contra.*—None of the counts of the complaint were subject to the demurrer interposed to them. Each of said counts stated a sufficient cause

of action.—*Laughran v. Brewer*, 133 Ala. 515; *Mary Lee Coal & Ry. Co. v. Chambliss*, 97 Ala. 174; Code of 1896, §§ 3285, 3352; *G. P. Ry. Co. v. Davis*, 92 Ala. 306; *So. Ry. Co. v. Guyton*, 122 Ala. 231; *L. & N. R. R. Co. v. Orr*, 94 Ala. 602; *L. & N. R. R. Co. v. Hawkins*, 92 Ala. 241; *M. & O. R. R. Co. v. George*, 94 Ala. 214; *Western Ry. Co. of Ala. v. Lazarus*, 88 Ala. 453; *A. F. R. R. Co. v. Waller, Admr.*, 48 Ala. 460; *M. & M. R. R. Co. v. Crenshaw*, 65 Ala. 567; *G. P. R. Co. v. Propst*, 85 Ala. 205; *Leach et al. v. Bush*, 57 Ala. 145; *M. & O. R. R. Co. v. Thomas*, 42 Ala. 672; *Hall v. Posey*, 79 Ala. 85; *L. & N. R. R. Co. v. Mothershed*, 97 Ala. 265.

SHARPE, J.—A complaint declaring on negligence under the employers' liability act embodied in section 1749, *et seq.*, of the Code, should in respect of certainty conform to rules which under our system apply to pleadings generally. Those rules permit the averment of conclusions, but conclusions when employed must ordinarily be accompanied with averments of fact whereon issues can be understood, joined and tried.—*Leach v. Bush*, 57 Ala. 145; *Laughran v. Brewer*, 113 Ala. 509; *L. & N. R. R. Co. v. Hawkins*, 92 Ala. 243; *M. & O. R. R. Co. v. George*, 94 Ala. 199; *So. R'y Co. v. Arnold*, 114 Ala. 187. By this test, and by comparison with the complaint approved in *Ga. Pac. R. Co. v. Propst*, 85 Ala. 203, counts 2, 3 and 7 of this complaint each well state a cause of action under subdivision 2 of the section referred to.

When based on defects in the ways, works or machinery of the employer the complaint should describe the defects with such particularity as to inform the defendant of what he is called on to defend.—13 Ency. Pl. & Prac., 908. The first count apparently attempts to present a case under subdivision 1 of the same Code section. After averring in substance that plaintiff's intestate received injuries while employed in replacing a derailed car it concludes as follows: "Plaintiff alleges that said car fell upon his intestate and he died as aforesaid by reason and as a proximate consequence of

a defect in the condition of the ways, works, machinery or plant connected with or used in the said business of defendant, which said defect arose from or had not been discovered or remedied owing to the negligence of defendant or of some person in the service of defendant and intrusted by it with the duty of seeing that the said ways, works, machinery or plant were in proper condition, viz: the appliances used by defendant in or about attempting to get said car upon said rails were not proper and sufficient for that purpose." What appliances are here referred to as having been used to place the car, is not indicated by name, office or other description, though many appliances may have been used in that attempt. This was vicious uncertainty. Furthermore this count shows not that the appliances were defective but merely that they were "not proper *and* sufficient" for the purpose of placing the car. To escape condemnation by this averment the thing used must have been not only proper, but sufficient to effect the purpose. Conceding that appliances may be defective in respect of adaptability as well as for inherent flaws, yet if they are proper to be used as an auxiliary, the mere fact that they are insufficient to accomplish the whole undertaking does not show they ought not to be used. This is illustrated by the facts of the present case.

Briefly condensed the undisputed facts are that plaintiff's intestate, as one of defendant's train crew, was under superintendence of either defendant's conductor or section foreman, assisting to place on its track a derailed car. Two "rachet or track jacks" were used to raise and hold up one end of the car while the trucks were being pushed under that end by workmen, one of whom was the plaintiff's intestate, who was partly under the car. While he was in that position pushing the trucks, one of the jacks gave way, which allowed the car to come down and crush the intestate's head against the trucks, whereby he was killed. The rachet jacks were about twelve inches high and their force was applied and relaxed by means of a rachet and lever working in combination with other movable and stationary parts. They were exhibited in evidence on the

trial. There was evidence tending to show that the rachets when jarred were liable to slip and give way, and also that the car fell because the jack received a jar. Some evidence tended to show the jacks careened without slipping and so allowed the car to descend. It was in evidence that the jacks are such as have been in successful use by defendant and several other railroad companies both for raising tracks and cars. That they were ever designed or furnished by defendant to hold cars in position after being raised, so as to admit of work being carried on beneath them, has not been shown. The two uses, one of raising and the other of sustaining cars, against shocks and lateral force to which they may be subjected in placing trucks thereunder are essentially different. One involves the application of leverage to hoist, and the other to make steadfast. Like the simple lever and fulcrum these jacks may have been well adapted to perform the first though deficient for the latter function. It is practicable in most cases for a car after being raised to be securely propped by simple means, and without machinery, and there is no reason to suppose the company did not intend this should be done whenever it might become necessary for its employes to work under the cars. The employment of rachet jacks without more for the purpose of propping, may have involved negligence imputable to the defendant through the person to whom it entrusted superintendence of the work, but the unauthorized employment of an appliance in a use for which it is neither suited nor provided imputes no negligence to the employer in respect of providing machinery or of seeing that it is in proper condition.—*Mobile, etc., R. Co. v. George,* 94 Ala. 199; Bailey's Per. Inj., § 615; *Felch v. Allen* 98 Mass. 572. These considerations show both that the first count was subject to the demurrer and that the evidence did not show a cause of action under the first subdivision of the statute.

It was proper to submit to the jury the determination of the cause as presented by the 2d, 3d and 7th counts.

Damages in such cases if recoverable are to be measured by "the pecuniary value of the life of the employe

to his next of kin, resulting either from a relation of dependency or from the distribution of such estate as it may be inferred from the evidence he would have earned and saved but for untimely death."—*L. & N. R. R. Co. v. Trammell*, 93 Ala. 350. That the intestate's mother was a widow was a fact relevant to show that she stood in a relation of dependency and, therefore, would probably have received contribution from him had he lived. This from a legal as well as moral standpoint since under section 3233 of the Code the son is legally liable for the support of an indigent mother.

Evidence of the decedent's experience in railroading, was relevant on the *quantum* of damages by way of showing earning capacity and also on the question arising under the defense of contributory negligence. The doctrine applicable to that phase of the case being that an employe may rely upon those in authority over him to see that appliances used for the business in hand, will be reasonably safe unless from observation or experience or information from other source, he knows and appreciates the danger involved in the use of such as are provided.—*So. R'y Co. v. Guyton*, 122 Ala. 231; Bailey's Per. Inj., §§ 841, *et seq.*

The questions addressed to Farmer as an expert witness were each based on a phase of the evidence, and neither they nor the answers were subject to objection. Those answers considered as expert testimony were permissible statements of opinion rather than conclusions of fact.

Ordinarily the fitness of a railroad appliance for special uses of one company may be tested by what is shown to be the custom of well regulated railroad companies with respect to such uses under like circumstances. The practice of a few such companies though it may tend to show what is the custom, does not have the effect as a conclusion of law.—*L. & N. R. R. Co. v. Hall*, 87 Ala. 208; *Richmond, etc., R. Co. v. Weems*, 97 Ala. 270. In *Weem's case* a charge proposing to make a standard test of duty by the usage of five railroad companies was held to be invasive of the jury's province. Charge 6 referring to eight companies for a like purpose is subject to the same objection. This charge and likewise

charges 7 and 8 would have withdrawn from the jury the question of whether there was negligent superintendence in omitting to use supports in addition to the jack, for though they have been in general and proper use for replacing cars, due care might require that under circumstances like those of this accident their use should be supplemented by other supports.

Acts and conduct of the decedent such as are hypothesized in refused charges 9 to 15, inclusive, do not show negligence as a legal conclusion unless he was chargeable with knowledge that the jacks were liable to fall. These charges pretermit inquiry into the fact of such knowledge.

Refused charge 16 seems to attempt a statement of the rule of damages laid down in *Trammell's* case, *supra*. By substituting the word "so" for "as" the language of that rule is changed and its meaning obscured if not perverted.

Charge 17 gives such prominence to a phase of the evidence favorable to the defendant as to depreciate other evidence not so favorable and for that reason if not for others was properly refused.

What is assigned as error relating to plea 8 is unsupported; that plea not being in the transcript.

For error in overruling the demurrer to the first count and in submitting that count to the consideration of the jury, the judgment must be reversed and the cause remanded.

Reversed and remanded.