[Alabama Steel and Wire Company v. Griffin, Admr.].

# Alabama Steel and Wire Company v. Griffin, Admr.

*Action for Damages for Death of Employee.*

(Decided Feb. 5th, 1907.　42 So. Rep. 1034.)

1. *Appeal; Rulings on Pleadings; Harmless Error.*—Counsel for plaintiff having stated that plaintiff did not claim a recovery on any of the counts of the complaint, except certain specified ones, and the court in its charge to the jury having limited the right of recovery to the specified counts, the complaint was in effect amended by striking out the abandoned counts and rulings on demurrer to those counts, if error, was harmless.

2. *Master and Servant; Statutory Regulation; Railroad Employees.* —Subdivision 5 of section 1749, Code 1896, has application only to one employed in and about a railroad, and one seeking a recovery thereunder must allege and prove that at the time of the injury he was employed in and about a railway, and it it not sufficient that he was employed at the plant of an employer who also owned a railroad operated in furtherance of the business of the palnt.

3. *Same; Injury to Servant; Complaint; Sufficiency.*—A complaint which alleges that the employer owned and operated a plant and a railroad and that plaintiff's intestate was killed by cars striking other cars while loading them in consequence of the negligence of an employee on the railroad states a cause of action under subdivision 5, section 1749, Code 1896.

4. *Appeal; Ruling on Demurrer; Review.*—On appeal, this court will not consider the sufficiency of the complaint on a ground not presented by the demurrer thereto.

5. *Master and Servant; Injury to Servant; Compaint; Sufficiency.* —A complaint alleging that the employer was operating a plant, and that while the plaintiff's intestate was engaged in and about the business of the employer at or near the plant, he was struck by cars operated on a railroad owned by the employer, does not state a cause of action under subdivision 5 of section 1749, Code 1896; it being wanting in averment that intestate was employed in or about the railway, or that he was discharging any duty in connection therewith.

6. *Name; Middle Initial.*—Letters of administration designating the intestate as "C. L. C.," are admissible in evidence, although

[Alabama Steel and Wire Company v. Griffin, Admr.]

intestate's correct name was "C. C.," the insertion of the middle initial being surplusage.

7. *Master and Servant; Injury to Servant; Negligence; Evidence.*—
The counts on which the case was tried not alleging negligence in the failure to have a headight on the engine, evidence of a want of the headlight was immaterial.

8. *Death; Evidence; Damages.*—It was permissible to show that plaintiff's intestate and another walked from another state to the place of employment, begged food and slept in barns, as shedding light upon whether or not intestate was a sober and industrious man, or an inebriate, a tramp or a lazy man, to go to the jury in determining intestate's earning capacity, and as shedding light on the question of damages.

9. *Measure of Damages; Evidence; Admissibility.*—It may be shown in an action for the negligent death of intestate that he was skilled in trades other than the one in which he was employed. and what he could earn at such trade, as shedding light on his probable earning capacity, unless he had permanently abandoned the same, or had become incapacitated from following it before his death.

10. *Appeal; Assignments of Error; Sufficiency.*—The portion of the judge's charge containing several hundred words and many sentences is set out in the bill of exceptions. The assignment of error does not point out particularly the defective portions, and counsel do not do so in brief. Held, the exception is unavailing unless all the portion set out is bad.

11. *Trial; Instructions; Applicability to Pleading.*—An instruction predicated upon a defect which was not alleged in either count of the complaint that went to the jury, was properly refused.

12. *Same; Misleading Instructions.*—A charge asserting that if the jury believed that intestate's parents did not know where he was getting the money they testified he sent to them, and if the jury did not believe that intestate was earning the money, in computing the measure of damages, they could not estimate the same as a basis, was misleading and properly refused.

13. *Death; Measure of Damages.*—Where the parents of the intestate were entitled to the damages awarded for his death, their life expectancy does not enter into the estimate of the damages.

14. *Same; Jurisdiction.*—Although intestate was a non-resident and had no property in this state at the time of his death, his administrator may recover for the negligent death in the courts of this state.

15. *Appeal; Instructions; Review.*—Instructions relating to counts open to demurrer, and so held on this appeal, will not be considered.

[Alabama Steel and Wire Company v. Griffin, Admr.]

16. *Master and Servant; Injury to Servant; Action; Instruction.*— An instruction asserting that if someone unknown to the other employes had thrown the switch and they were not aware that the switch had been thrown, a verdict should be rendered for defendant, was misleading and properly refused; as was an instruction asserting that if the person named in the complaint did not throw the switch, nor authorize the same to be thrown, and did not know that it was thrown so as to divert the cars on to the track where intestate was working, there could be no recovery.

17. *Trial; Instructions; Conformity to Issues.*—Where none of the counts submitted to the jury predicated negligence on signals given by one employe to another, an instruction based on the giving of signals was properly refused.

18. *Same; Instructions; Credibility of Witness.*—A charge asserting that if the jury believed that a witness had willfully sworn falsely to any material fact, they might, in their discretion, disregard his testimony is proper.

19. *Appeal; Exceptions to Instruction; Review.*—Although the bill of exceptions does not recite that the refused instructions was separately requested, yet if each charge shows that it was separately considered and marked refused, the ruling on each instruction is revisable.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Action by J. H. Griffin, administrator of C. Cahill, deceased, against the Alabama Steel & Wire Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

This cause, as appears from the opinion, was tried upon counts 5, 6, 9, and 11, which are as follows:

"(5) Plaintiff claims of the defendant the sum of twenty-five thousand dollars damages, for that heretofore, to-wit, the 18th day of February, 1904, the defendant was engaged in operating a plant at or near Gadsden, Ala., for the manufacture of pig iron and other material; that on said date, while plaintiff's intestate was in the service or employment of the defendant, a car or cars of the defendant ran upon or against plaintiff's intestate, injuring him, so that he died. And plaintiff says that his intestate's death was caused as aforesaid by reason and as a proximate consequence of

the negligence of one J. N. Mitchell, a person in the service or employment of the defendant, and who had charge or control of a signal, switch, or points upon a railway or part of the track of a railway of the defendant, in this, viz.: Plaintiff's intestate was, while in the discharge of his duty as such employe, engaged in loading some cars for the defendant, which had been placed or were standing upon a switch, spur track, or siding of the defendant's railway to be loaded with ore or other material for use at the blast furnace of the defendant; and plaintiff says it was the duty of the said J. N. Mitchell, when advised by plaintiff's intestate, or others assisting in loading the cars, that the cars were ready to be moved or set out, to so set the switch or points upon the railway to let the engine, locomotive, or cars in or upon the switch or siding that the loaded cars might be moved; and the plaintiff says that the said Mitchell negligently set or arranged the switch or points so as to let in the engine and cars, and when he had not been advised to do so; and plaintiff says that by reason of the negligence of said J. N. Mitchell as aforesaid an engine and cars of the defendant were run in or upon the said side track, switch, or spur with great speed, and upon or against the plaintiff's intestate as aforesaid. Hence this suit."

(6) Same as fifth down to and including the words "viz.," where it first occurs in said fifth count, continuing: "Plaintiff's intestate was, while in the employ of defendant and while in the discharge of his duty as such employe, engaged in loading some cars for the defendant which were standing upon a swtich, spur track, or siding at the time of the loading; and plaintiff says it was the duty of the said J. N. Mitchell to so set the switch or points on the track as to let in the engine, locomotive, or cars of the defendant for the purpose of moving out the loaded cars when advised or signaled to do so, and when the cars were loaded and ready to be moved; and plaintiff says that at the time his intestate received the injuries as aforesaid the said J. N. Mitchell negligently set the switch or points on the track, and by reason of such negligence the engine and some cars of the defendant were run at great speed upon said

switch, spur track, or siding, and when no signal had been given for the engine or cars to come in, and at a time when they were not expected by plaintiff's intestate, inflicting the injuries as aforesaid. Hence this suit."

"(9)    Plaintiff claims of the defendant the sum of twenty-five thousand dollars as damages, for that heretofore, to-wit, on the 18th day of February, 1904, the defendant was operating a plant at or near Gadsden, Ala., for the manufacture of pig iron and other materials; that on said day, and while plaintiff's intestate, the said Cahill, was in the service or employment of the defendant, and engaged in and about said business of the defendant at or near said plant, a car or cars ran upon or against said intestate, and so injured him that he died. And plaintiff avers that his intestate's death was caused in the manner aforesaid, by reason and as a proximate consequence of the negligence of a person in the service or employment of defendant who had charge or control of a locomotive engine upon a railway or part of the track of a railway of defendant, viz., defendant's engineer, Smith, of the locomotive engine, who caused said car or cars to move and run upon or against said intestate as aforesaid, negligently by means of said engine causing said cars or car to run against or upon said intestate as aforesaid."

(11)    Same as count 9, down to and including the words "that he died," where they first occur in said count 9, and continuing: "And plaintiff avers said car or cars ran upon or against said intestate, and his death was caused as aforesaid, by reason and as a proximate consequence of the negligence of a person in the service or employment of the defendant who had charge or control of a switch, signal, or points upon a railway or part of the track of a railway of the defendant, viz.: One Walter Mitchell negligently changed said switch, signal, or points, so that by reason thereof certain cars operated by the defendant were run upon the wrong track, and struck a car standing upon said last-mentioned track, and as a proximate consequence thereof one or more of said cars ran upon or against said intestate, and caused his death as aforesaid."

Demurrers were interposed to these counts as follows:
To the fifth count:

"Because it does not state a cause of action. It appears that the defendant is not liable for the alleged negligent act of Mitchell. It does not appear that Mitchell had superintendence intrusted to him by defendant. It does not give the name of the person in charge or control of the switch, signal points, etc. For that it does not appear that defendant was operating a railroad in the contemplation of the statute. It does appear that the signal, switch, points, etc., were not a part of such railroad as contemplated by the statute. It does not appear that the instate was injured while aiding as a servant in the operating of such a railroad as contemplated by statute. For that it does not appear that intestate's duties required his presence on the railroad track. From aught that appears, intestate was wrongfully on the railroad track. For that it does not appear that said Mitchell knew that intestate was on the railroad track, or had any reason to believe he was on said track."

The same grounds are assigned to the sixth count of the complaint, and the same to the eleventh count of the complaint.

To the ninth count of the complaint, the same grounds as to the fifth count, with these additional grounds: "For that it does not appear that Smith had superintendence intrusted to him. For that it does not give the name of the person in charge or control of the engine or car. For that it is doubtful and uncertain under which subdivision or subsection of the statute said count is framed."

Objection was interposed to the introduction of the letters of administration, because issued upon the estate of C. L. Cahill, while the complaint charges that the intestate was C. Cahill. Objection was also interposed to testimony that the engine which ran back with the cars that injured intestate had no light on it, or on the cars it was pushing. The defendant sought to introduce evidence showing that intestate and Kirchner walked from Knoxville, Tenn., begged food, and slept in barns and under hayricks. This testimony was ex-

cluded on motion of plaintiff. It was shown that the intestate was working for one dollar per day at the time of his death. The plaintiff sought to show, and the court permitted it, that the plaintiff was a stone cutter, and when working at his trade earned from four to six dollars per day. The evidence tended to show that the intestate was in the employment of the defendant loading or unloading some cars with ore, that the cars were on a siding or spur track used by defendant in the operation of its furnace and steel plant, and that it was near to a trestle or raised track, and that from the track of which was a part of this track several tracks branched off; that the rule was that an engine and cars coming back on either of these tracks were to give certain signals, or were to be signaled a certain way to come back on the tracks as a warning to those loading the cars to get out of the way. There was dispute as to whose duty it was to set the switch and to give the signals, and as to whether the switch was properly set, and there was testimony that the switch had been tampered with, or that some one not connected with defendant or in his employment had thrown the switch and left it set for the wrong track. There was dispute as to whether the defendant was guilty of contributory negligence in the way he was loading, and in the place he occupied on the cars while loading; there being, it was contended, a safe way and an unsafe way.

The following charges were requested by the defendant and refused by the court:

"(1) If the jury believe from the evidence in this case that C. Cahill was earning only $31.20 per month, of which amount he was spending $15 for board, $10 for clothing, and $5 per month for incidentals, you cannot find that he was contributing more than $1.20 per month out of his said earnings to the support of his mother.

"(2) In estimating the damages in this case, if you believe the evidence, you cannot compute the damages on a basis of what the deceased could have earned as a stone cutter or granite cutter, if you are reasonably satisfied from the evidence that for a long time prior to

his death, and at the time of his death, he had not worked and was not working at that trade. ·

"(3) If you believe from the evidence in this case that there was no defect as alleged in the plaintiff's complaint, and that A. M. Brown threw the switch, and that neither Smith, nor J. M. Mitchell, nor Walter Mitchell, knew or was aware that the switch had been thrown, and that, as soon as it was discovered that the switch had been thrown, every effort in good faith was made by said Smith and Mitchell to give warning of the approach of the cars and to stop the cars and engine to avoid injury to the deceased, you will find a verdict in favor of the defendant.

"(4) If you believe from the evidence in this case that the Cahills whose testimony has been read to you did not know where the deceased was getting the money they say he was sending home, and if you do not believe from the evidence in the case that the deceased was earning said money, you cannot estimate the same as a basis for computing the measure of damages in this case." ·

"(6) The proper measure of damages is not the aggregate amount of what C. Cahill was contributing to the support of his mother and father; but if is such sum as, with legal interest added, would aggregate that amount at the probable termination of the life of his mother and father.

"(7) The measure of damages in this case is such as, with legal interest, during the period of expectancy of the life of plaintiff's mother and father, would produce at its expiration a sum equal to the amount that would be contributed to said father or mother during said period." ·

"(11) If you believe, from the evidence in this case, that C. Cahill was a nonresident of the state of Alabama, and had no estate in the state of Alabama at the time of his death, plaintiff cannot recover."

"(17) If you believe the evidence in this case, you cannot find a verdict in favor of plaintiff under the count in the complaint which alleges the negligence of Walter Mitchell.

"(18) If you believe, from the evidence in this case, that some one unknown to Z. Smith and J. N. Mitchell

threw the switch which leads from the trestle track to the coal track, and that neither said Smith nor said Mitchell was aware that said switch had been thrown, so as to divert the cars from said trestle track to said coal track, you will find a verdict in favor of the defendant."

"(23) If you believe, from the evidence in this case, that J. N. Mitchell did not throw said switch, nor authorize the same to be thrown, nor knew that the same was thrown, so as to divert the engine and cars onto the coal track where plaintiff's intestate was working, plaintiff cannot recover under the counts in the complaint claiming damages by reason of the negligence of said Mitchell.

"(24 It is immaterial in this case whether J. N. Mitchell gave to Engineer Smith a high ball or a go-ahead signal, if you believe, from the evidence in this case, that Smith understood the signal to mean that he should propel the cars up to the trestle track, and if you believe, from the evidence in this case, that J. N. Mitchell, by giving such signal, intended to signal the engineer to propel the cars up the trestle track."

"(27) If you believe the evidence in this case, plaintiff cannot recover damages beyond the life expectancy of the father and mother of the deceased."

(31) Affirmative charge as to fifth count.

(32) Affirmative charge as to sixth count.

(35) Same as to the ninth count.

"(36) If you believe, from the evidence in this case, that the witness Brown has willfully and corruptly sworn falsely as to any material fact in this case, you may in your discretion disregard his testimony entirely."

There was jury, and verdict for plaintiff for $11,500.

BURNETT, HOOD & MURPHY, for appellant.—The demurrer to the 5th count of the complaint should have been sustained.—Dresser on Employer's Liability, §§ 73 and 80; *Whatley v. Zenida Coal Co.*, 122 Ala. 118; *H. A. & B. Ry. Co. v. Dusenberry*, 94 Ala. 416. On the same authorities the demurrer should have been sustained to the 6th count. The demurrers to the 9th

[Alabama Steel and Wire Company v. Griffin, Admr.]

count should have been sustained.—*Mobley's Case,* 139 Ala. 425; *Lamb's Case,* 124 Ala. 172; *William's Case,* 140 Ala. 230; *Ga. Pac. Ry. Co. v. Propst,* 85 Ala. 205; *Southern Ry. Co. v. Guyton,* 122 Ala. 240. Subsection 5 does not protect those employes not actually engaged in railroad work.—*Indianapolis Union Ry. Co. v. Haulihan,* 157 Ind. 494; *Deppe v. Chicago R. I. & P. R. Co.,* 36 Iowa, 52; *Lavallee v. St. Paul M. & M. R. R. Co.,* 40 Minn. 249; *Nichols v. Walter,* 37 Minn. 264; *State v. Smith,* 58 Minn. 35; *Johnson v. St. Paul & D. R. Co.,* 8 L. R. A. 419; *Ballard v. Mississippi Cotton Oil Co.,* 34 So. 533; *L. & N. R. Co. v. Morris,* 65 Ala. 200; *Youngblood v. Birmingham T. & S. Co.,* 95 Ala. 524; *Smith v. L. & N. R. Co.,* 75 Ala. 449; *Brown v. A. G. S. R. Co.,* 87 Ala. 370; *Randolph v. Builders P. & S. Co.,* 106 Ala. 510; *Kentz v. Mobile,* 24 So. 952; Cooley's Constitutional Limitations, (5 Ed.) pp. 483-484; *Wally v. Kennedy,* 2 Yerger, 554; *Holden v. James,* 6 Am. Dec. 174; *Missouri v. Lewis,* 101 U. S. 22; *Minneapolis Ry. Co. v. Beckwith,* 129 U. S. 26; *L. & N. R. Co. v. Railroad Commission,* 19 Fed. 679; *State v. Goodwill,* 25 Am. St. Rep. 863; *Barbier v. Connelly,* 113 U. S. 27.

The court erred in admitting the letters of administration.—*Gerrish v. The State,* 53 Ala. 476; *Diggs v. The State,* 49 Ala. 309; *O'Brien v. The State,* 91 Ala. 25; *Johnson v. Wilson,* 137 Ala. 468; *United States v. Upham,* 43 Fed. 68. The court erred in permitting evidence of the wages received by deceased as a stone cutter in Massachusetts.—*Storay v. Union Bank,* 34 Ala. 687; *People v. Augsberry,* 97 N. Y. 501. The court erred as to damages recoverable in this action.—*Ala. Min. R. R. Co. v. Jones,* 114 Ala. 519; *James v. R. & D. R. R. Co.,* 92 Ala. 231; *L. & N. R. R. Co. v. Jones,* 130 Ala. 456. Counsel discuss other assignments of error but cite no authority.

BOYKIN & BRINDLEY, and GOODHUE & BLACKWOOD, for appellee.—The allegations and statements of counts 5, 6, 9 and 11 are sufficient and not subject to the demurrers interposed thereto.—*Seaboard Mfg. Co. v. Wilson,* 94 Ala. 132; *U. S. Rolling Stock Co. v. Weir,* 96 Ala. 397; *K. C. M. & B. R. R. Co. v. Burton,* 97 Ala. 240;

*Mary Lee C. & Ry. Co. v. Chambliss,* 97 Ala. 171; *G. P. Ry. Co. v. Davis,* 92 Ala. 300. The count drawn under subdivision 5 did not need to allege that the person in charge or control of the signals, points, etc., was at. the time in the discharge of his duties as an employe of defendant on or about a railroad.—*Woodward Iron Co. v. Henderson,* 21 South. 430; *State of Iowa v. McCombs,* 18 Ia. 50; *Sewall v. The State,* 82 Ala. 57·; *Schee v. LeGrange,* 78 Ia. 101; *Fannin v. Kraff,* 68 Ia. 244. The court properly admitted the letters of administration.—*Edmundon v. The State,* 17 Ala. 179; *Pace v. The State,* 69 Ala. 231; *Rooks v. The State,* 83 Ala. 80. The court did not err on its rulings on Butler's testimoney.—21 A. & E. Ency, of Law, p. 517, and authorities there cited; *L. & N. R. R. Co. v. Persons,* 97 Ala. 211. The court did not err in admitting evidence as to the former occupation and wages of deceased nor as to what deceased earned two or more years before · his death.—*Christian v. Columbus Ry. Co.,* 90 Ga. 124; *Richmond etc. Ry. Co. v. Hammond,* 93 Ala. 181; *Louisville, etc. Ry. Co. v. Graham,* 98 Ky. 688; *McAdory v. Louisville & Nashville R. Co.,* 94 Ala. 272; *James v. R. & D. R. R. Co.,* 92 Ala. 231; *L. & N. R. R. Co. v. Orr,* 91 Ala. 548; *District of Columbia v. Woodbury,* 136 U. S. 450; Amr. & Eng. Ency. Lay, Vol. 8, p. 944, and note 2, bottom of page.

The court's oral charge was correct as to the measure of damages.—*Trammell v. L. & N. R. R. Co.,* 93 Ala. 350; *R. & D. R. R. Co. v. Weems,* 97 Ala. 202.

ANDERSON, J.—In the opening argument counsel for the plaintiff stated to the court and jury that plaintiff did not claim a recovery in the case on any count of the complaint except the fifth, sixth, ninth, and eleventh; and the court, in the oral charge to the jury, limited plaintiff's right to recovery upon these counts and these alone. This was in effect an amendment of the complaint by striking out all the other counts, and, if there was any error upon the pleading in reference to said abandoned counts, it was error without injury, and we will only consider the rulings on the pleadings

which apply to counts 5, 6, 9 and 11.—*Sou Ry. Co. v. Bunt*, 131 Ala. 591, 32 South. 507; *Woodward Iron Co. v. Andrews*, 114 Ala. 243, 21 South. 440. These views are not in conflict with what was held in the case of *A. G. S. R. R. v. Burgess*, 114 Ala. 587, 22 South. 169. There it was held that a withdrawal of the counts should appear of record, and not left only to be shown by bill of exceptions, and that said counts and the rulings thereon are legally before the court for review. They may be legally before the court for review, but, where it is shown affirmatively by the bill of exceptions that these counts were abandoned by plaintiff and charged out by the trial court, although they may be before us, we are fully warranted by the force of reason and authority in holding that any erroneous rulings relating to said counts, was error without injury.

The counts upon which the case was tried (5, 6, 9, and 11) were evidently intended to come within the purview of subdivision 5 of the employer's liability act (section 1749, Code 1896), which reads as follows: "When such injury is caused by reason of the negligence of any person in the service or employament of the master or employer, who has charge or control of any signal, points, locomotive, engine, switch, car or train upon a railway or of any part of the track of a railway." Mr. Dresser, in his excellent work on Employer's Liability Act (section 73, p. 322), says: "The employer's liability acts of England, Alabama, Massachusetts, Colorado, and Indiana have likewise favored the employes of railroads above those engaged [in other occupations by inserting a clause designed exclusively for their benefit. The purpose of this enactment is more effectually to protect employes of railroads from the peculiar dangers of that business. It applies only to railroad employes, and whether or not a case comes within its terms depends, first, upon the question whether it is an injury received in operating a railroad, as that word was understood by the framers of the act." This court has held that subdivision 5 relates only to engines and cars on a railway.—*Whatley, Adm'r v. Zenida Coal Co.*, 122 Ala. 118, 26 South. 124. For whose benefit was this subdivision enacted? This question has

never before been answered by this court, but has been settled in other states, and by the Supreme Court of the United States, in passing upon statutes not identical with, but enacted for the same practical purpose as, ours. It was there held that this law was enacted for the protection of those engaged in the hazardous character of business of operating a railroad.—*Mo. R. R. v. Mackey,* 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; *Mo. Pa. R. R. v. Humes,* 115 U. S. 512, 6 Sup. Ct. 110, 29 L. Ed. 463; *Barbier v. Connolly,* 113 U. S. 27, 5. Sup. Ct. 357, 28 L. Ed. 923. The Supreme Court of Iowa, in the case of *Foley v. Chicago R. I. & P. R. R.,* 64 Iowa, 644, 21 N. W. 124, says: "The manifest purpose of the statute was to give its benefits to employes engaged in the hazardous business of operating railroads. When thus limited, it is constitutional. When extended further, it becomes unconstitutional." See, also, *Ind. Union R. R. Co. v. Houlihan,* 157 Ind. 494, 60 N. E. 943. 54 L. R. A. 787; *Deppe v. Chicago R. R.,* 36 Iowa, 52: *Lavallee v. St. Paul R. R.,* 40 Minn. 249, 41 N. W. 974; *Nichols v. Walter,* 37 Minn. 264, 33 N. W. 800.

Mr. Reno, in his work on Employer's Liability Act (section 69), says: "As applied to railroad companies, the defense of fellow service has been much further restricted by the employer's liability acts than as applied to other employers. As we have seen, other employers are made liable for the negligence of their superintendents. Railroad companies are not only made liable by the Massachusetts act for a superintendent's negligence, but also for the 'negligence of any person in the service of the employer' who has the charge or control of any signal, switch, locomotive engine, or train upon a railroad.' The English and Colorado statutes are to the same effect, though the English act uses the word 'points' instead of 'switch.' The Alabama act goes still further in this direction, and makes a railroad company liable for 'the negligence of any person in the service of the master or employer who has charge or control of any signal, points, locomotive engine, switch, car, or train upon a railway, or of any part of the track of a railway." While it is to be observed that the Alabama act goes further than any other, and especially further

than those heretofore construed, we cannot for a moment conceive the idea that it was intended to embrace any employes except those employed in and about a railroad. *Ex vi termini,* in order for the plaintiff to recover under said subdivision, the pleading and proof must show that at the time he was injured he was employed in and about the railroad. It is not sufficient that he was employed at a plant by the same master, who also owned and controlled a railroad, which may be operated in furtherance of the business of the plant. His duties must be in and about the railroad. Counts 5 and 6, while averring that defendant owned and operated a plant, also averred that it was operating a railroad, and that the intestate was killed by cars on the track on defendant's railway "while in discharge of his duties as such employe, engaged in loading some cars for the defendant, which had been placed or were standing upon a switch, spur track," etc., and sufficiently bring the parties within the terms of subdivision 5.

Counsel for appellant contend, in brief, that the fifth count is bad because it avers the duties of Mitchell in the alternative, and that it falls within the influence of the case of *H. A. & B. R. R. Co. v. Dusenberry,* 94 Ala. 413, 10 South. 274. Whether it does or not we need not determine, as the question is not presented by any grounds of the demurrer to the complaint.

Counts 9 and 11 aver that the defendant was operating a plant; "that while the intestate was in the service and employment of the defendant, and engaged in and about the business of the defendant at or near said plant, * * * he was run upon or against. * * *." There is no averment in either of said counts 9 and 11 that would even indicate that the intestate was employed in or about the railway, or that he was discharging any duty in connection with a railway. He may have been working in or about the plant, and yet may have been in no way connected with the railway at the time he was killed, so as to bring him within the influence of subdivision 5 of the statute. The trial court erred in not sustaining the demurrers to counts 9 and 11. The case of *Ala. G. S. R. R. Co. v. Davis,* 119 Ala. 572, 24 South. 862, cannot save these counts. The court, af-

ter some criticism, upheld the counts in said case, which are more definite than the two now under consideration. There the only business engaged in by the defendant, as was averred, was operating a railroad, and that the plaintiff was at the time an employe of the defendant. Here we have an averment that the defendant was operating a plant, and that the intestate was employed and engaged in and about said business at or near said plant. What business? There certainly is no averment that he was employed in or about a railroad. .

There was no merit in the objection to the letters of administration, because the deceased was called "C. L. Cahill," instead of "C. Cahill." The insertion of the middle letter makes no difference, and it could be disregarded.—*Edmundson v. State,* 17 Ala. 179, 52 Am. Dec. 169; 21 Am. & Eng. Ency. of Law, p. 307.

Evidence as to whether or not the engine had a light on it was not material to the issues involved in the counts submitted to the jury; but whether relevant under the counts that were subsequently charged out we need not decide as the case must be reversed on other questions.

The defendant had a right to show that plaintiff's intestate was not a man of industry and thrift—that he was an inebriate, a tramp, or a lazy and indolent man— as affecting his habits of industry and earning capacity. All of the other exceptions to the evidence relate to the measure of damages in cases of this character, which has been so repeatedly established by this court that we feel that a mere reference to some of the authorities will suffice.—*Ala. Min. R. R. Co. v. Jones,* 114 Ala. 519, 21 South. 507, 62 Am. St. Rep. 121; *James v. R. & D. R. R. Co.,* 92 Ala. 231, 9 South. 335; *L. & N. R. R. Co. v. Jones,* 130 Ala. 456, 30 South 586. We can discover nothing in the evidence objected to violative of the rule, or that should receive any special notice by us, except, perhaps, to determine whether or not the plaintiff was confined in his proof to the probable earnings of intestate in the trade or calling in which he was engaged,

and as to what his services were worth in Alabama, and at the time of his death. We do not think the plaintiff would be prohibited from showing that the intestate was skilled in trades other than the one in which he was engaged at the time of his death, or of showing what he could earn in Alabama, or elsewhere, at such other trade or trades, unless he had permanently abandoned such other trades or callings, or had become incapacitated from following such trades previous to his death.—*Seaboard Mfg. Co. v. Woodson,* 98 Ala. 378, 11 South. 733; *Rayburn v. Central Iowa R. R. Co.,* 74 Iowa, 643, 35 N. W. 606, 38 N. W. 520; *Grimmelman v. Union Pac. Co.,* 101 Iowa, 74, 70 N. W. 90.

We find an exception to a certain portion of the court's oral charge, and which, as set forth, contains about 300 words, and many sentences, covering nearly an entire page of the transcript. There is nothing in the exception which attempts to point out the defective portions, if any exist, nor in the assignment of error or brief of counsel. The exception cannot avail the appellant, unless all that portion of the court's charge excepted to was bad. Such is not the case, at most, if not all, of it, is correct.—*Simpson v. State,* 111 Ala. 6, 20 South. 572.

Charges 1 and 2, requested by the defendant, were properly refused, and are fully discussed in what we said as to evidence relating to the measure of damages.

Charge 3, requested by the defendant, was properly refused. If not otherwise bad, it is predicated upon a defect which was not charged in either of the counts that went to the jury.

Charge 4 was properly refused. If not otherwise bad, it was misleading.

Charges 6 and 7, requested by the defendant, were properly refused. We do not understand that the life expectancy of the parents of the intestate has anything to do with the measure of damages.

Charge 11, requested by the defendant, was properly refused.—*Reiter-Connally Co. v. Hamlin,* 144 Ala. 192, 40 South. 280.

Charge 17 need not be discussed by us, as it relates to count 11, to which we hold the demurrer should have been sustained.

Charge 18 was properly refused. There was a count charging the negligence to Walter Mitchell, and, if he left the switch open, the plaintiff could recover, whether J. N. Mitchell or Zimri Smith left the switch open, or knew who did leave it open.

Charge 23, requested by the defendant, should have been given.

Charge 24, requested by the defendant, was properly refused. None of the counts submitted to the jury predicated the negligence complained of upon any signal given by J. N. Mitchell to Smith.

Charge 27, requested by the defendant, was properly refused.

Charges 31 and 32, requested by the defendant, were properly refused as there was evidence in support of counts 5 and 6.

Charge 35, requested by defendant, need not be considered, as we hold that the demurrer should have been sustained to the ninth count.

Charge 36, requested by the defendant, should have been given.—*McClellan v. State,* 117 Ala. 140, 23 South. 653.

Appellee's counsel insist that these charges come within the influence of the rule laid down in *Verberg v. State,* 137 Ala. 73, 34 South. 848; 97 Am. St. Rep. 17, and *Sou. Ry. Co. v. Douglass,* 144 Ala. 351, 39 South. 268. It is true the bill of exceptions does not recite that they were separately asked; but each charge shows that it was separately considered, and marked "Refused," by the court.

The judgment of the city court is reversed, and the cause is remanded.

Reversed and remanded.

TYSON, C. J., and DOWDELL and SIMPSON, JJ., concur.