[Pear, as Administrator, v. Cedar Creek Mill Co.]

# Pear, *as Administrator,* *v.* Cedar Creek Mill Co.

*Action for Damages for Death of Employe.*

(Decided June 18, 1908. 47 South. 110.)

*Master and Servant; Railroads; Personal Injury; Jury Question.* —Under the facts in this case, it was a question to be determined by the jury whether the decedent at the time of his death was engaged in and about the business of a railroad, and whether his death was caused by the negligence of the person in charge of the switch, so as to bring him within the class mentioned in subdivision 5, section 1749, Code 1896. (McClellan, J., dissents in part.)

APPEAL from Escambia Circuit Court.

Heard before Hon. J. C. RICHARDSON.

Action by William Pear as administrator against the Cedar Creek Mill Company for damages for the death of his intestate alleged to have been caused by the collision of a car and engine on a railroad track of defendant. Judgment for defendant and plaintiff appeals. Reversed and remanded.

RABB & PAIGE, for appellant. The employer cannot treat as a breach of duty, but is held to sanction that which by the contract of employment he has required the employe to do, and the mere fact that the employe knew that the work was manifestly dangerous, does not, of itself, constitute contributory negligence.—*Osborn v. Ala. S. & W. Co.* 135 Ala. 576; *M. & B. R. R. Co. v. Halborn,* 84 Ala. 133; *H. A. & B. R. R. Co. v. Walters,* 91 Ala. 435. The master should inform the servant of the particular perils and danger of a hazardous business.—*Cent. of G. R. R. Co. v. Parsons,* 136 Ala. 596; *Robinson & Co. v. Holbert,* 32 Ala. 462. In order to be guilty of contributory negligence, the employe

must do that which is dangerous in a dangerous way—135 Ala. 576; 122 Ala. 238; 109 Ala. 287. Unless he does, he neither assumes the risk nor is guilty of contributory negligence.—132 Ala. 490.

M. A. RABB, for appellee. The evidence does not support the material allegations of the complaint. This authorizes the affirmative charge.—135 Ala. 540; 67 Ala. 1; 57 Ala. 253; 115 Ala. 396; 85 Ala. 203.

SIMPSON, J.—This suit is by the appellant for the death of his intestate, who, it is alleged, belonged to a "construction gang" of defendant, and was killed by the car (on which he was) coming against the engine with such force as to cause said intestate to fall. The counts are all under the employer's liability act, except one (count A), which alleges that the defendant was negligent in not providing some person to give signals to the engineer. There is no evidence which tends to support this count, nor is there any evidence which has tendency to support either of the other counts, except those which allege negligence in the person in charge of the switch.

According to the evidence, the plaintiff, with several others, was on a car which was loaded with steel rails and cross-ties. An attempt was made to make a running switch, the intention being for the car to be detached from the engine, and, when the engine had passed the switch, for the switch to be thrown so that the car would go on another track; but it went on, on the same track with the engine, and thus came in contact with it, and one witness states that said car failed to go on the other track "by them not throwing the switch in time." The evidence shows that the defendant was running a railroad, and, while its name indicates that that

is not its principal business, yet there is no evidence distinctly showing that the defendant is engaged in any other business than that of running a railroad. One of the witnesses did say that "Jim had no connection with the railroad; he belonged to the construction gang." Yet other witnesses state that the intestate and others were taking up the steel rails and cross-ties at one place, and putting them down at another; that the construction gang took up and put down track with rails and cross-ties; that the construction gang went along with the engine all of the time; that the engine stayed with them until the cars were loaded, and then the gang went along with the cars and unloaded them. Hence we cannot say that the intestate was not employed in and about the railroad, within the meaning of *Ala. Steel & Wire Co. v. Griffin*, 149 Ala. 423, 42 South. 1034, 1038, and *Woodward Iron Co. v. Curl*, 153 Ala. 215, 44 South. 969, 974.

It is true that several witnesses testify that the person in charge told all of those who were on the car in question to get off before the switch was made, and that all of them except the intestate did get off; but those who were with him testify that they did not hear said order, and that they got off to get their dinner buckets. Under this testimony we cannot say, as a matter of law, that intestate heard the order, and was riding on the car in disobedience of orders, or was guilty of contributory negligence. For the reasons given, we think it was a matter for the jury to consider whether the intestate was engaged in and about the business of the railroad, and whether his death was caused by the negligence of the person in charge of the switch. Consequently it was error to give the general charge in favor of the defendant.

The judgment of the court is reversed, and the cause remanded.

TYSON, C. J., and DENSON and McCLELLAN, JJ., concur.

McCLELLAN, J.—While I concur in the conclusion reached on this appeal, I cannot agree to the opinion in the respect that it approves the ruling made in *Alabama Steel & Wire Co. v. Griffin,* 149 Ala. 423, 42 South. 1034, and in *Woodward Iron Co. v. Curl,* 153 Ala. 215, 44 South. 969, in the construction of subdivision 5 of our employer's liability statute (Code 1896, § 1749).

In response to the suggested point that the 1907 codification of the cited statute, without change as here pertinent, after the opinion in the *Griffin Case,* was delivered, operated to readopt the statute with the presumed intent to color it, in meaning and effect, by the construction taken in the *Griffin Case,* this point is in my opinion without merit, for the reason that at the time the codification was accomplished the *Griffin Case* had not been officially reported. Indeed, it has not yet been so reported. Endlich on Stat. Const. § 368; *Hakes v. Peck,* 30 How. Prac. (N. Y.) 104. The only official report of the decisions of this court is provided for in chapter 107, art. 5, Code of 1896; and in section 3869 the exclusive right to publish such reports of decisions here was (and is now) retained by the state. The Southern Reporter, a private undertaking, is a valuable aid to the courts and the bar in the publication of our decisions; but it cannot, for the purpose of the rule of construction now under consideration, take the place of an official report of the decisions of this court, without (among other things) infracting our statutes on the subject. This rule of construction is based upon known

judicial expositions, and the presumption raised thereon is too important—too far-reaching—to be indulged on unofficial statements of what has been held here. If the codification or other enactment made express reference to a ruling, though unreported, it would probably be that such ruling would come within the known judicial expositions requisite to justify the application of the rule.

Omitting subdivisions 1 to 4, inclusive, of our liability statute, the enactment plainly provides that the master or employer shall be liable to his servant or employe, if such servant or employe receives a personal injury, while in the service of the master or employer, from the negligence of "any person in the service or employment of the master who has charge or control of any signal, points, locomotive, engine, switch, car, or train upon any railway, or of any part of the track of railway." Of course, by the clear letter of subdivision 5, the negligence for the consequence of which a recovery may be had must be with reference to one or more of the railway's features mentioned in the subdivision. But to hold that it is thereby provided, or that the major clause so provides, or both together so intend, that the benefit of this phase of the statute is open only to those servants when and as engaged in or about the operation of a railroad, is, in my opinion, to amend the statute by judicial construction—to read into the major first clause of the statute a limitation of the broad right, rested therein on the relation of master and servant declared in that clause. The opinion in the *Griffin Case* confesses a want of authority for its conclusion from this court; and upon investigation of the decisions of other jurisdictions noted in the opinion it will be found that they are rulings on statutes not declaring liability upon the broad relation of master and servant as our statute

does. It is true, Dresser, as quoted, affirms what is, on that authority, held in the *Griffin Case;* but the author cites no authority in support of his views. On the other hand, Labatt, at section 722, declares that no tribunal, to his knowledge, had then construed the English act as denying a recovery, under the act, to a railway servant whose service, at the time of injury, was in a collateral undertaking of the railway company; and he asserts that, if such were held, it would conform the act in that respect to those of Kansas, Iowa, and Minnessota. The difference between those acts, as construed, and our own, will at once appear upon a reading.

If it be assumed that the master, under our act, is liable only when the servant is injured, within its terms, by a fellow servant, and the position of this court, defining a fellow servant, is correctly announced in *Georgia Pacific Railroad Co. v. Davis,* 92 Ala. 313, 9 South. 252, 25 Am. St. Rep. 47, I cannot see how the injured servant, in *Griffin Case,* could have been warrantably denied the benefit of subdivision 5 of our statute. The master, in the *Griffin Case,* was a manufacturer of pig iron and other materials, and as a part of its plant had and operated a railway. The deceased was, when injured, loading "ore or other material for use at the blast furnace of the defendant;" and the negligence imputed was of one having charge or control of some of the features of a railway mentioned in subdivision 5. See *Tenn. C. I. & R. R. Co. v. Hayes,* 97 Ala. 201, 12 South. 98. There can be, it seems to me, no serious contention that the act would be rendered unconstitutional if construed to embrace those servants injured while engaged in the service of the master, aside from the operation of the railway, since the hazards of that service are generally held to warrant legislative inter-

ference, in the way of control and fixing liability, as appears in many of our statutes, notably Code 1896, § 3440, et seq.

The subject will not be pursued at greater length at this time. Sufficient is written to indicate the ground of my opinion that the *Griffin* and *Curl Cases* are unsound.

*Action for Damages for Death of Employe.*

