[Boggs v. Alabama Consolidated Coal & Iron Company.]

# Boggs *v.* Alabama Consolidated Coal & Iron Company.

## *Damage for Injury to Employe.*

(Decided Feb. 3, 1910.   Rehearing denied June 30, 1910.
52 South. 878.)

1. *Master and Servant; Injury to Servant; Assumption of Risk.*—
An employe assumes the risk of injury caused by the negligence of
a fellow servant acting within the scope of his employment, except
as modified by the employer's liability act.

2. *Same; Employer's Liability Act.*—The Employer's Liability Act
is remedial, and will be construed so as to advance or add to the
remedy of a servant against the negligence of the master; such act
does not codify the whole law as to the liability of employers, or
destroy any common law right of servant, and it will not be presumed
that the legislature intended to make any innovation upon the com-
mon law further than the case absolutely required.

3. *Same; Liability for Act of Another Employe.*—The Employer's
Liability Act (Secs. 3910, subd. 5, Code 1907) does not bar recovery
for the negligence of an engineer in defendant's employ although
the engineer and the employe killed were not fellow servants.

4. *Same; Who Are Fellow Servants.*—Employes engaged in or
about a railway, including therein employes who by their employ-
ment are brought into such close relation with the operation of the
road that the danger from the operation constitutes an ordinary
danger of the service in which they are engaged, though not strictly
railroad employes, are fellow servants with those operating signals,
points, locomotives, trains, etc, on a railway, and are, therefore,
within the purview of the Employer's Liability Act.   (Subd. 5, Sec-
tion 3910, Code 1907.)

(Mayfield, J., dissents.)

APPEAL from Birmingham City Court.

Heard before Hon. C. C. NESMITH.

Action by Lawrence B. Boggs as administrator,
against the Alabama Consolidated Coal & Iron Com-
pany, for damages for the death of his intestate, an
employe.   Judgment for defendant and plaintiff ap-
peals.   Reversed and remanded.

[Boggs v. Alabama Consolidated Coal & Iron Company.]

DANIEL COLLIER, and ALLEN & BELL, for appellant. Counsel discuss the pleadings and insist that the opinion in the case of *Ala. S. & W. Co. v. Griffin*, 149 Ala. 423, is not sound, and that it has no application to the case at bar, but that the proper construction of the statute referred to, will be found in the case of *I. U. R. R. Co. v. Houlihan,*, 54 L. R. A. 788.

TILLMAN, GRUBB, BRADLEY & MORROW, for appellee. This court has twice decided the identical question adversely to the appellant.—*Ala. S. & W. Co. v. Griffin*, 149 Ala. 423; *Curl v. Woodward I. Co.,* 153 Ala. 215. The demurrer sufficiently tested the validity of the counts, and the ruling of the court is supported by the following well considered cases.—*Johnson v. St. P. & Dul. R. Co.,* 8 L. R. A. 419; *Ind. U. Ry. Co. v. Houlihan,* 157 Ind. 494; *Deope v. Chicago R. I. & P. Co.,* 36 Ia. 52; *M. R. R. Co. v. Mackey,* 127 U. S. 205; *M. P. R. R. v. Humes,* 115 U. S. 512; *Barbier v. Connelly,* 113 U. S. 27; *Foley v. Chi. R. I. & P. Co.,* 64 Ia. 644; *Lavallee v. St. Paul R. R.,* 40 Minn. 249; *Nichols v. Walter,* 37 Minn. 264; *Malone v. Burlington C. R. & N. R. Co.,* 16 N. W. 203; Dresser's Lia. sec. 73, p. 322; Reno Employer's Lia. Act, sec. 68; *Smith v. Burlington C. R. & N. Ry.,* 12 N. W. 763.

SAYRE, J.—There were 12 counts in the complaint to all of which, in their final shape, demurrers were sustained. The complaint alleges that plaintiff's intestate and the engineer of whose negligence he complains were both in the employment of the defendant and engaged at the time of the injury in the discharge of duties imposed upon them by their employment. No doubt the effort of the pleader was to state a case within the fifth subdivision of the employer's liability act (Code 1907, § 3910). No doubt, also, the court below

felt constrained by the decision of this court in *Alabama Steel & Wire Company v. Griffin*, 149 Ala. 423, 42 South. 1034, subsequently approved by a majority of the court in *Woodward Iron Company v. Curl*, 153 Ala. 215, 44 South. 969, and in *Pear v. Cedar Creek Mill Co.*, 156 Ala. 263, 47 South. 110, to hold that the complaint stated no cause of action under the statute; this for the reason that the complaint showed that the plaintiff's intestate was employed as a carpenter in and about the defendant's mine, so that he was not of that class of railroad employes for whose benefit the statute was said in *Griffin's Case* to have been enacted. It is now insisted that the cases referred to were based upon a misconception of the meaning of the statute, and a formal dissent by one member of the court, and the reluctant acceptance of those cases by some members of the bar who appear to have given the question special attention, as well as the earnest protest of the appellant in this case, seem to justify some further examination of the subject.

It is familiar law that, except as modified by the employer's liability act, a servant undertakes, as between himself and his master, to run all the ordinary risks of the service, and this includes the risk of injury caused by the negligence of a fellow servant while acting within the scope of his employment. And this court, in *Central of Georgia v. Lamb*, 124 Ala. 172, 26 South. 969, held that the employe assumed also the risk of injury resulting from the wanton or willful wrongdoing of fellow employes except in the instances provided for in the act. The reason assigned for this rule is that the servant knows when he enters the service that he will be exposed to the hazard of injury from negligence on the part of his fellow servants, and he must be supposed to have contracted on the terms that as between himself

and the master he would assume the risk. In *Smoot v. M. & M. Ry. Co.*, 67 Ala. 13, it is stated by the court that there is also a higher reason for relieving the master from liability for such injuries, founded in the policy of encouraging and compelling the servant to exercise diligence and caution in the discharge of his duties, which, while protecting him, affords protection also to the master; such diligence being properly esteemed a better security against injury from the negligence of a fellow servant than recourse against the master for damages, when the injury has been received. The cogency and sufficiency of the reason stated in the *Smoot Case* has been much doubted. It occurs to us that the assumption of risk by implied contract is the juristic basis of the doctrine of common employment, while the encouragement and compulsion of the servant to the exercise of diligence, thus fostering industrial enterprises, constitute its justification as an economic policy. However that may be, the common-law doctrine of the contract assumption of risk, including the risk of injury from the negligence of co-employes, is too firmly established to be disturbed by the courts. But every legislative enactment on the subject implies an upturning of the supposed policy because not justified by experience, and compels a narrowed and restricted application of the juristic theory.

It is proper at this point to remark that the servant stands in the position of assuming the risk only when he has received injury while acting in his master's service by the act of a fellow servant also so acting. In other words, the injured and the negligent servants or employes must have been engaged in a common employment. If the injured person was not so acting, he was one of the public; if the act which caused the injury was not within the scope of the negligent servant's employ-

ment, the master is not responsible. The employer's liability act has wrought certain changes in the law stated. But it is well enough to remember that it was no part of the purpose of the act to codify the whole law as to the liability of employers or to destroy any common-law right of servants. All servants are entitled to maintain actions against their employers in all cases where they could formerly have done so.—Robts. & Wall. Duty & Liability of Employers, 207; *Ryals v. Mechanics' Mills,* 150 Mass. 190, 22 N. E. 766, 5 L. R. A. 667; *Colorado Milling Co. v. Mitchell,* 26 Colo. 284, 58 Pac. 28. It is not to be presumed that the Legislature intended to make any innovation upon the common law further than the case absolutely requires. Such has been the language of the courts in all ages.—1 Kent's Comm. 464. This court has repeatedly announced the general principle. The statute, however, is remedial and ought to be construed so as to advance the remedy. In *M. & B. Ry. Co. v. Holborn,* 84 Ala. 133, 4 South. 146, it is said that, while a narrow and restricted view of the statute should not be taken, the court, considering its objects, having regard to the intention of the Legislature, and taking a broad view of its provisions, commensurate with its proposed purposes, would not enlarge the term further than may be necessary to effectuate its manifest ends. In any view, there is no reason to suppose an intention to deprive servants injured by the negligence of other servants of any right of action they had at the common law. A servant injured by the negligent act of another servant acting for the common master within the scope of his employment cannot be denied the right of recovery in an action under the statute on the ground that he was not engaged in a common employment with the delinquent without conceding to him the right to recover under the common

law as a stranger, for he must have a place in one category or the other. There can be no sufficient reason for marooning servants of the master who are fellow servants of a delinquent, but who do not engage in the operation of a railroad, in a class to themselves where, alone of all the world, they may not maintain a suit against the master for injurious negligent act of another servant having charge or control of any special point, locomotive, engine, electric motor, switch, car, or train upon a railway, or any part of the track of a railway. It seems, however, to be supposed, and the demurrer in this case asserts, that this has been the effect of the decisions to which we referred in the outset.

The statute deals only with those cases which at the common law were affected by the doctrine of common employment, for only in such cases was the servant denied the right to recover of the master for the negligence of another servant. Unless the negligent and the injured employes were engaged in a common employment, as affecting the master's liability, they stood to each other in the relation of strangers, although they may have been employed by a common master. "If the contract implied on the part of the servant is to bear the risk only of the business in which he is engaged, and not the risk of another business, he would not be prevented by his contract from maintaining an action against the master, if he were injured by the negligence of another servant of the same master, engaged in other business. His remedy would be restricted by the contract only as to the negligence of fellow servants engaged in the same general service, or those employed in the conduct of one common enterprise, or undertaking, or those whose employment is such that, by their negligence in the usual line of their duty, he might reasonably expect to be endangered, or those whose negligence might be under-

stood to be incident to his service."—*Fifield v. Northern Railroad Co.,* 42 N. H. 225. "As a laborer on a railroad track, either in switching trains or repairing the track, is constantly exposed to the danger of passing trains, and bound to look out for them, any negligence in the management of such trains is a risk which may or should be contemplated by him in entering upon the service of the company. This is probably the most satisfactory test of liability. If the departments of the two servants are so far separated from each other that the possibility of coming in contact, and hence of incurring danger from the negligent performance of the duties of such other department, could not be said to be within the contemplation of the person injured, in the doctrine of fellow service should not apply."— *Northern Pac. Railroad v. Hambly,* 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009. "The principle underlying those decisions which hold a master liable to a servant for the negligent act of another servant in a separate and distinct department of the service is that a servant only assumes the risk from the negligence of those so closely associated with him that he is presumed to have contracted with reference to such work."—*L. & N. R. R. Co. v. Stuber,* 108 Fed. 934, 48 C. C. A. 149, 54 L. R. A. 696. There are many other cases to the same effect. To state the proposition in the language of Mr. Labatt: "There may be a disconnection of duties so great that it would be wholly unreasonable to infer that the risk of the negligent servant's act was one which the injured servant contemplated and accepted."—Sec. 499. Further, he says that there is a complete unanimity as to the points that, in order to let in the defense of common employment, it must appear that, at the time of the accident in suit, the negligent and injured servants were not only under the control of the same master,

but were also engaged in the discharge of duties which may be said, in a reasonable sense, to have been directed to the attainment of the same end.—Section 493. It is to be noted, also that the statute does not make that negligence which was not negligence before; it does not make the master responsible for acts or things which do not constitute a breach of duty; it does not create a cause of action where none previously existed; it merely adds a remedy against a person other than the actual wrongdoer; it takes away from the master one defense, placing the employe, when the conditions of the statute have been satisfied, in the position of one of the public. —Robts. & Wall. pp. 180, 242, 243. The result is that the position of an employe injured by the negligence of another employe of the same master, but not in the common employment, is unaffected.

In *Alabama Steel & Wire Comany v. Griffin, supra,* speaking of those counts of the complaint in which recovery was sought under subdivision 5 of the employer's liability act, is was said: "Ex vi termini, in order for the plaintiff to recover under said subdivision, the pleading and proof must show that at the time he was injured he was employed in and about the railroad. It is not sufficient that he was employed at a plant by the same master, who also owned and controlled a railroad, which may be operated in furtherance of the business of the plant. His duties must be in and about the railroad." This ruling was based upon the finding that subdivision 5 of the act was enacted for the protection of those engaged in the hazardous business of operating a railroad only, and this finding, in turn, was based upon the proposition that to give it any other construction would render the subdivision unconstitutional, and in support of that proposition the opinion of the Supreme Court of Iowa in *Foley v. Chicago, etc., R. R. Co.,* 64 Iowa 644,

21 N. W. 124, is quoted, as follows: "The manifest purpose of the statute was to give its benefits to employes engaged in the hazardous business of operating railroads. When thus limited, it is constitutional. When extended further, it becomes unconstitutional." We will notice as briefly as may be the authorities cited to sustain the position.

In *Missouri Pac. Rwy. Co. v. Mackey,* 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107, the Supreme Court held that the hazardous character of the business of operating a railway would seem to call for special legislation with respect to railroad corporations, having for its object the protection of their employes as well as the safety to the public. The statute of Kansas there under consideration was in terms directed against railroad companies. In view of the latter utterances of that court, it may well be that the statute of Kansas offended against the Constitution of the United States, for that, discriminating between corporations and natural persons operating railroads, it denied to the former the equal protection of the laws.—*Smith v. Ames,* 169 U. S. 466-522, 18 Sup. Ct. 888, 43 L. Ed. 197. As for the rest, that decision clearly recognized the right of the states to legislate for the protection of employes as well as the public against the special dangers incident to the operation of railroads. The statute in that case was upheld.

*Missouri Pacific v. Humes,* 115 U. S. 512, 6 Sup. Ct. 110, 29 L. Ed. 463, and *Barbier v. Connolly,* 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923, had to do, the one with a statute requiring railroad corporations to erect and maintain fences and cattle guards on the sides of their roads, and the other with a municipal ordinance prohibiting washing and ironing in public laundries and washhouses within defined territorial limits and within

certain hours. So far as we are now able to see, these cases do not touch the question involved in the case at hand.

In the case of *Foley v. Chicago, R. I. & Pac. Railway Co., supra,* the court had under consideration a section of the Code of Iowa which was in this language: "Every corporation operating a railroad shall be liable for all damages sustained by any person, including employes of such corporation, in consequence of the neglect of agents, or by any mismanagement of the engineers or other employes of the corporation, and in consequence of the willful wrongs, whether of commission or of omission, of such agents, engineers or other employes, when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed." Consideration of the language of the statute seems to show that its purpose was to deny to railroad companies the defense of common employment only in the event both the injured and the negligent employes are employed on or about the railroad. That also seems to have been the view of the court. The plaintiff sued as an employe. The decision was that he could not recover for the reason that he had nothing to do with the running of trains, and was therefore not engaged at the time of his injury in the service of the defendant in such capacity that he was entitled to recover under the statute damages for an injury by reason of the negligence of a co-employe. At an earlier time there had been in Iowa a statute in these words: "Every railroad company shall be liable for all damages sustained by any person, including employes of the company, in consequence of any neglect of the agents, or by any mismanagement of the engineer or other employe of the corporation, to any person sustaining such damage." In speaking of this statute in *Deppe v. Chi-*

*cago, R. I. & Pac. R. R. Co.*, 36 Iowa 52, the court used the language quoted in *Alabama Steel & Wire Co. v. Griffin, supra,* as follows: "The manifest purpose of the statute was to give its benefits to employes engaged in the hazardous business of operating railroads. When thus limited, it is constitutional. When extended further, it becomes unconstitutional." To illustrate its view the court said: "Suppose a railroad company employ several persons to cut the timber on its right of way where it is about to extend its road, and the landowner employes a like number of persons to cut the timber on a strip of equal length alongside of such right of way. If one of each set of employes shall be injured by the negligence of a co-employe, and the employe of the railroad company can, under the statute, maintain an action against his employer and the other cannot, then it is clear that the law does not apply upon the same terms to all in the same situation." And the statute was held to be an effort at class legislation. In order to avoid that operation of the statute, it was held that it gave its benefits to employes engaged in operating railroads only. So far as concerns the result reached in that case, we have no need to quarrel with the decision. It might have been put upon the ground that the statute, applied in strict accordance with its language, would work a discrimination against railroad companies as such, because natural persons operating railroads were not put in the same category. The statute of Iowa considered in *Deppe's Case* had been passed in 1862. The Legislature of that state seems to have been of the opinion that the real trouble with it was as we have suggested, for in 1872 it enacted a similar statute extending, however, its provisions to persons as well as to corporations owning or operating a railroad.—2 Labatt, § 758a. It is to be observed that our statute

makes no discrimination in the class of employers or employes affected by it. It may be that only those persons, natural or artificial, operating railroads, make use of signals, locomotives, cars, and the like, upon railways, and hence that subdivision 5 affects employers only who are engaged in the operation of railroads; but the classification here is based upon the fact that the operation of railroads, by whomsoever operated, involves great and peculiar hazards. The statute is in part a police regulation.

No satisfactory brief quotation can be made from the case of *Indianapolis Railway Company v. Houlihan,* 157 Ind. 494, 60 N. E. 943, 54 L. R. A. 787, cited to support the *Griffin Case.* The case supports that view of the statute we now take. The argument of counsel concludes with the statement that the Alabama statute creates a liability for the negligence of those in charge of signals, engines, etc., in favor of all co-employes.

In *Ditberner v. Chicago, etc., R. R. Co.,* 47 Wis. 138, 2 N. W. 69, the doctrine of the Iowa cases is disapproved. Minnesota got its law from Iowa. Mr. Labatt refers to their decisions with evident disapproval in this language: "In order to save the Iowa and Minnesota acts from the imputation of being repugnant to the constitutional provision which prohibits class legislation, it has been deemed necessary to hold that, although the words employed by the Legislature were perfectly general, they should be construed as being applicable only to servants engaged in the actual operation of the road."

We do not doubt that our statute is entirely free from constitutional objection, and must receive a broader application in respect to the class of employes affected than it was permitted to have in *Griffin's Case.* That case is modified accordingly. We hold that employes

engaged in or about a railroad, including therein employes brought by their employment into such close relation with the operation of the railroad as that it may be said, in a reasonable sense, that danger therefrom constitutes an ordinary danger of the service in which they are engaged, though they be not strictly railroad employes, as well as those engaged in the actual operation of the railroad, are fellow servants with those employes who operate signals, locomotives, trains, etc., on the railroad, and fall under the influence of the subdivision. Employes otherwise circumstanced are entitled to sue as members of the public having no particular relation with the railroad—as strangers.

Probably what has been said extends the influence of the statute in practical application to but few cases in which the injured employe is not immediately engaged in the operation of a railroad—the case considered with approval in *Alabama Steel & Wire Co. v. Griffin* being of the number—and it does not at all affect the fact that railroads are responsible in one form or the other for all injuries proximately caused by the negligence of their employes operating locomotives, etc., along their tracks, as was the case here alleged. Where the negligence occurs in the operation of signals or points, the rule may be different, for possibly, as to them, a railroad company owes no duty to strangers. It affects only the framing of the complaint. It seems to have been the rule in dealing with declarations under the employer's liability act, to treat an allegation of employment by a common master as a sufficient allegation of an employment common in respect to the risk assumed under the common-law status, and it has been required that a complaint so framed must exclude the master's defense, arising at the common law out of the relation, by stating with some particularity a case falling under some

subdivision of the statute. Community of employment is necessarily implied between an employe who inspects for use and one who uses the appliances inspected. So between a superintending employe and one superintended. So between an employe who gives orders and directions and him who must conform. Subdivision 4 is more difficult. But no such implication arises in respect to a servant injured by the negligent act or omission of another operating a railroad train. Where it is uncertain just what the relation between the plaintiff and the negligent employe was at the time of the injury complained of, or rather, how the facts will turn out, good practice would seem to require that, in order to avoid a variance, counts under the statute be joined with others on the common-law liability of the master as to a stranger.—*Ryalls v. Mechanics' Mills, supra.* That seems to have been the effort of the pleader in the beginning. Later on, all counts were put in the same category.

As we understand the record, the demurrer to the various counts as amended, aside from some grounds which cannot be considered because they are merely general, asserted in various phrases that the plaintiff should not be allowed to recover on the case stated for two reasons: (1) Plaintiff's intestate and the delinquent engineer were fellow servants, and therefore plaintiff cannot recover on any principle of law; (2) plaintiff's intestate was not engaged in operating a railroad, and therefore plaintiff cannot recover under subdivision 5 of the employer's liability act. In other words, the demurrer sets up a class of fellow servants who are not entitled to the benefits of that subdivision of the statute. But, as we think we have shown, this proposition of the demurrer is untenable. And that is all we are undertaking at this time. We do not affirm that plain-

tiff's intestate and the negligent employe were fellow
servants. In dealing with the case we have assumed
that relation to have existed between them because the
demurrer does not question it. The demurrer does not
question the sufficiency of the complaint for any other
reason than that we have indicated. It should have
been overruled.

Reversed and remanded.

SIMPSON and EVANS, JJ., concur. ANDERSON and
McCLELLAN, JJ., concur in the conclusion. MAYFIELD,
J., dissents.

ANDERSON, J.—While I concur in the conclusion
reached by the majority that some of the counts were
not subject to the grounds of demurrer interposed there-
to, I do not wish to be understood as extending subdi-
vision 5 of the employer's liability act any further than
it was extended in the *Griffin* and *Curl Cases, supra.*
In other words, I think the complaining servant must be
a fellow servant with the one charged with the damni-
fying act or omisson, and, as the latter is charged with
being an employe in and about a railroad, the former
must of necessity have been engaged in the discharge
of some duty in and about the same general or common
business in order to be a fellow servant with the latter.
If he was not he cannot be a fellow servant. The fact
that they have the same common master does not con-
stitute them fellow servants, as it must appear that
their duties are in and about the same common or gen-
eral business, and, unless such is the case, there is no
field of operation for and no need of subdivision 5, and
the injured servant would doubtless have his remedy
under the common law. Independent of the statute,
one who was injured through the misconduct of one
other than a fellow servant had his recourse, and the

statute was intended to modify the rigor of the common law in favor of one who was injured by a fellow servant. If they are not fellow servants, there is no need for the statute, and it does not and cannot apply. In order to invoke the statute, the plaintiff's intestate must have been a fellow servant with the one causing the death or injury. If the derelict servant is employed in and about the business of operating a railroad, how can the injured or complaining servant be his fellow servant, unless his duties also required him to be connected in some manner in and about the operation of a railroad? Here we have a case charging the dereliction to one engaged in and about a railroad, yet in some of the counts describing the plaintiff's intestate as a carpenter engaged in and about the defendant's plant. Could it be seriously contended that a carpenter employed to build or work upon houses and buildings situated upon defendant's premises, and which was a part of its plant, was a fellow servant with a person working on a railroad of the same defendant, simply because defendant operated said railroad in connection with its plant? I think not. Can it be seriously contended that, if the defendant used mules and horses or oxen in connection with its plant and a railroad as well, the man who fed, watered, or drove the stock would be a fellow servant with the one who fired or operated the engine upon the railroad track? Subdivision 5, if extended to a carpenter or blacksmith, unless his duties in some way required him to work in and about the railroad, could as well apply to the hostler or gardener. It is true, some of the counts in the case at bar made it the duty of plaintiff's intestate to work upon trestles on defendant's railroad, and while there he would doubtless have been a fellow servant with the trainmen and other employes of the railroad; but there are other counts which

do not charge him with any duties in and about a railroad. To disturb the holding in the *Griffin case, supra,* would, in effect, extend subdivision 5 to servants of the same master notwithstanding their respective duties would be disassociated from those of the others. It would make the railroad operatives fellow servants with the men who worked in the mine of the same master as well as those who built and repaired his houses, fed his mules and horses, drove his oxen, and cooked his breakfast.

All that was decided in the *Griffin Case* was that counts 5 and 6 were within subdivision 5, inasmuch as they averred that the plaintiff's intestate was killed while in the discharge of his duty in loading a car upon the defendant's railroad, and that counts 9 and 11 were not within said subdivision, as they merely stated that the intestate was engaged in the discharge of his duty in and about the defendant's plant and did not make it his duty to be engaged in and about a railroad. A careful reading of the counts, as well as what is said in the opinion in reference thereto, is earnestly invited. It was not insisted or considered as to whether or not counts 9 and 11 were or were not good under the common law.

I do not object to the criticism of the *Griffin Case,* in so far as it may quote approvingly from Mr. Reno and the Iowa case as to the constitutionality of the law, if not limited to railroad employes. It could have been well omitted from the opinion and was merely arguendo. The constitutionality of the act was not questioned in the *Griffin Case,* and the only question that should have been considered, and which was really decided, was whether or not counts 5, 6, 9, and 11 were good under subdivision 5. It was held that 5 and 6 were good, and that 9 and 11 were not, as they did not show that the

plaintiff's intestate was killed or injured while in the discharge of any duty in and about a railroad. The said quotations can easily be eliminated from the opinion, and the result will be the same. On the other hand, extend subdivision 5 any further than it was extended in the *Griffin Case,* and the fellow-servant doctrine will be made to embrace all servants of a common master, whether there is or is not any identity or community of work or duty. The *Griffin Case* simply holds that, as the negligence charged was to defendant's servants upon a railroad, in order for the plaintiff to sue under subdivision 5, his intestate must have been a fellow servant with the ones charged with the damnifying act or omission, and must therefore have been killed or injured while in the discharge of some duty in and about a railroad. If not so engaged or employed, he was not a fellow servant with the derelict one and could not come within the influence of subdivision 5.

I concur in the conclusion and in the opinion in so far as it may question the soundness of the quotation in the *Griffin Case;* but, if it modifies, in the slightest, the real holding in said case, I dissent.