# Western Union Telegraph Co. *v.* Howington.

### Injury to Empoyee

(Decided December 21, 1916.   73 South. 550.)

1. **Abatement and Revival; Action Pending; Foreign Jurisdiction.**—The mere pendency of a transitory action for the same cause between the same parties in a foreign jurisdiction is not matter upon which to rest an abatement.

2. **Actions; Stay.**—The stay of a personal injury action on account of the pendency of an action for the same cause in the District Court of the United States in another jurisdiction is addressed to the sound discretion of the trial court, since the provision of § 6115, Code 1907, that all actions brought under the Employers' Liability Law must be brought in a court of competent jurisdiction within the State of Alabama and not elsewhere is invalid.

3. **Costs; Security for.**—Under the provisions of § 3688, Code 1907, it was proper to allow a non-resident plaintiff in a personal injury action to deposit $50.00 as security for costs, where no witnesses had been subpoenaed by either party, and no showing had been made that subpoenas would be sought or needed for witnesses within the state.

4. **Trial; Remarks of Court.**—Remarks of the court in expressing his ruling on a motion to suspend the progress of the cause do not constitute reversible error, especially where the court removed any possible prejudice by clear instructions to the jury.

5. **Appeal and Error; Review; Ruling Below.**—Where no ruling was made on the matter of argument of counsel there is nothing to review.

6. **Master and Servant; Fellow Servant; Statute.**—Subdivision 5, § 3910, Code 1907, abolishing the fellow-servant rule where injury is caused by a servant in charge of a car upon a railway, etc., is not confined to cases where the master is the owner or proprietor of the railroad or engaged in the operation of a railroad; it is sufficient if the servant has charge of the railway agencies described.

7. **Same; Injury to Servant; Complaint.**—Under subdivision 5, § 3910, Code 1907, a complaint is defective which omitted to aver that the foreman braking the car knew or should have known that the injured employee was in a position that such sudden braking would probably result in causing him to lose his balance and fall.

8. **Pleading; Demurrer.**—Under § 3540, Code 1907, such a defect was not sufficiently pointed out by demurrer specifying a failure to aver that the foreman knew that the plaintiff had just stopped cranking the hand car.

9. **Master and Servant; Injury to Servant; Complaint.**—In this action a count which did not unequivocally aver the duty of the foreman with respect to the operation of the brake on the car, as well as with respect to the obligation to warn those on the car if he intended to stop or check the car, was defective.

10. **Same.**—Where the count failed unequivocally to aver that at the time of the negligent act and injury plaintiff was engaged in the discharge of his duties, was defective, where it also averred that it was plaintff's duty with the other employees to crank or propel such handcar and further averred that when plaintiff was injured he had just stopped cranking said handcar.

11. **Pleading; Defenses; Anticipating.**—It was necessary that the complaint anticipate the defense that the sudden stopping of the handcar was necessitated by an approaching train.

(Gardner and Thomas, JJ., dissent.)

APPEAL from Franklin Circuit Court.

Heard before Hon. C. P. ALMON.

Action by Z. D. Howington against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The following is the complaint:

Count 2: "The plaintiff, who at the time hereinafter mentioned was, and now is, a resident citizen of the state of Georgia, county of Gwinnett, claims of the defendant (a corporation) the sum of $50,000 as damages, for that heretofore, to-wit, on or about the 1st day of September, 1913, said defendant was operating and maintaining a telegraph line or lines on and along the line or lines on and along the right of way of the Northern Alabama Railway through the counties of Colbert, Franklin, Marion, Winston and Walker, in the state of Alabama. In maintaining said telegraph line or lines as aforesaid, defendant, through its agents, servants, or employees, was on said day repairing or rebuilding said telegraph line about 2½ miles south of Russellville, Ala., in said county of Franklin, and plaintiff was on said day in the employ of defendant in the active discharge of his duty as laborer or groundman assisting in repairing or rebuilding said telegraph line or lines as aforesaid. As a part of said repairing or building, defendant operated a hand car or cars on and along the track of said Northern Alabama Railway, and was on said day at said place operating a hand car for the purpose of carrying said employees as well as instruments, poles, and wires, and at said time and place plaintiff, with other employees of defendant, with one W. L. Wall, assistant foreman of said repairing crew, was riding on said hand car. It being the duty of plaintiff, along with other employees, to crank or propel said hand car, when said hand car reached a place about 2½ miles south of Russellville, Ala., as aforesaid, the brakes on said hand car were

suddenly and negligently applied by said W. L. Wall, assistant foreman in charge of said hand car, without warning to plaintiff or the other said men on said hand car of his intention to do so, thus suddenly and negligently slackening the speed of said hand car, thereby throwing plaintiff forward, who was standing near the front of said car, and who had just stopped cranking said hand car, precipitating him violently to the ground and to the track in front of said hand car, the hand car overtaking and running over plaintiff, thereby wounding and bruising plaintiff, causing him to suffer great physical pain and mental anguish, etc. Plaintiff alleges that said injuries were caused by the negligence of said W. L. Wall, who had charge or control of said hand car on said railroad track at said time and place."

Count 3: Same as 2 in the statement of fact, with the following allegation of negligence: "Plaintiff alleges that his said injuries were caused by the negligence of said W. L. Wall, who had charge or control of the operation of said hand or lever car on which plaintiff was riding at the time he was injured as aforesaid, and which was being operated or run on said railroad track at the time and place aforesaid."

ALBERT T. BENEDICT, FRANCIS R. STARK, FORNEY JOHNSTON and W. R. C. COCKE, for appellant. ATKINSON & BORN and B. H. SARGENT, for appellee.

McCLELLAN, J.— (1, 2) The circuit court of Franklin county. gave a judgment against the defendant in favor of plaintiff (appellee) on account of injuries alleged to have been received by him while in the defendant's service. Before this suit was instituted in Alabama the plaintiff had commenced a suit for the same alleged wrong against the same defendant in one of the District Courts of the United States in the state of Georgia. This suit was still pending at the time the action in Alabama was called for trial. The defendant in our courts sought, through plea, the abatement of this action in the Alabama court because of the pendency of the action in the United States court in the state of Georgia. The mere pendency of a transitory action, for the same cause between the same parties in another sovereignty is not matter upon which to rest an abatement.—*Humphries v. Dawson*, 38 Ala. 204; *Forrest v. Luddington*, 68 Ala. 1, 16; *M. & C. R. R. Co. v. Grayson*, 88 Ala. 572, 578, 7 South. 122, 16 Am. St. Rep. 69; 1 C. J. § 113, pp. 84, 85. The plea was properly

stricken. The defendant then sought to have the cause in our courts stayed or continued on the ground of the pendency of the action in the District Court of the United States in Georgia. This presented to the circuit court of this state a question to be resolved by recourse to its sound discretion.—1 C. J., p. 1161, et seq. The provision attempted to be incorporated in our Code, § 3910 (Gen. Acts 1911, p. 485), whereby an action thereunder was sought to be restricted to the courts of Alabama (Code, § 6115) was, in effect, adjudged vain and annulled by the Supreme Court of the United States in *Tennessee Coal Co. v. George*, 233 U. S. 354, 34 Sup. Ct. 587, 58 L. Ed. 997, L. R. A. 1916D, 685, following and reaffirming the pertinent doctrine of the earlier decision of that court in *Atchison, etc., Ry. v. Sowers*, 213 U. S. 55, 70, 29 Sup. Ct. 397, 53 L. Ed. 695. The opinion in the *George Case* carries these very plain expressions: "But venue is no part of the right; and a state cannot create a transitory cause of action and at the same time destroy the right to sue on that transitory cause of action in any court having jurisdiction. That jurisdiction is to be determined by the law of the court's creation, and cannot be defeated by the extraterritorial operation of a statute of another state, even though it created the right of action.

"The decision in the *Sowers Case* [213 U. S. 55, 29 Sup. Ct. 397, 53 L. Ed. 695], however, was not put upon the fact that the suit was based on a common-law liability. The court there announced the general rule that a transitory cause of action can be maintained in another state even though the statute creating the cause of action provides that the action must be brought in local domestic courts."

Our statute law is to be regarded as not now embodying the stated restrictive provision. We have thus made reference to this matter because of the argument, stressed here for the appellant, that this plaintiff became an offender against Alabama's authority by instituting his action outside of Alabama in face of its statutory declaration. Having brought and prosecuted to effect his action in this state, there was little, if any, occasion to consider the point; especially since the provision has been finally concluded to be without the force or effect it was intended to have. The court below correctly exercised the discretion reposed in it in declining, on that account, to suspend the action's progress in that tribunal.

There is another preliminary question which the counsel for appellant press in brief. The plaintiff is a non-resident of Alabama; and the defendant moved the court to require him to give security for the costs of the action. In this connection the bill of receptions recites: "Before acting upon the defendant's motion to require the plaintiff to give additional non-resident security for costs, the court ascertained from the clerk of the court that the plaintiff deposited with the clerk of the court $15 in cash, the amount required by the clerk of the plaintiff as security by non-resident when the suit was brought. The court further ascertained from the clerk that no witnesses had been subpœnaed in said case, either by plaintiff or the defendant, and that the cost in the case would probably be $30 or $35, where no witnesses had been subpœnaed.

"The court, in response to the foregoing motion, required plaintiff either to give satisfactory bond to secure the costs of the action, or, in lieu thereof, at plaintiff's option to make a cash deposit aggregating $50, defendant duly excepting to so much of said order as authorized plaintiff to relieve himself of the obligation to give security for costs by depositing said sum, and thereafter stated and offered to show to the court that the sum of $50 would not be adequate to reimburse defendant for its costs incurred or to be incurred in the premises.

"The court overruled defendant's motion to require plaintiff to give a bond securing all costs or to give further security in the premises, defendant excepting."

(3, 4) The course taken by the court was expressly authorized by Code, § 3688. Such matters, aside from the right of the defendant to have the costs secured, are largely within the discretion of the trial court.—*First Nat. Bank v. Cheney,* 120 Ala. 117, 23 South. 733. The amount the court required was fixed after inquiry. No witnesses having been subpœnaed by either party, and no showing being then made that subpœnas would be sought or needed for witnesses within this state, the amount of the deposit fixed by the court must be accepted as adequate. Under the applicable doctrine of *Meinaka v. State,* 55 Ala. 47, 57, 58, *Harrison v. State,* 78 Ala. 5, 11, and *Shieffelin v. Schieffelin,* 127 Ala. 14, 33, 28 South. 687, no error can be predicated of the remarks of the court in expressing the ruling on the motion to suspend the progress of the cause. Furthermore, if the delay in taking the exception is ignored, the court

removed any possible prejudice by clear instruction of the jury.

(5) According to the bill of exceptions, there was no ruling of the court on the matter of the argument of plaintiff's counsel, in response to the argument of defendant's counsel, on the hearing of the motion to suspend this action because of the plaintiff's suit in the state of Georgia. Hence there is nothing to revise. If, however, there had been a ruling, it seems quite clear that what plaintiff's counsel said to the court, though in the hearing of the jury, was not beyond the range of responsive argument.

The issues submitted were those predicated of the averments of counts 2 and 3. The report of this appeal will reproduce these counts. Under this pleading the plaintiff's reliance for a recovery was placed upon a breach of duty within the fifth subdivision of our employers' liability statute.—Code, § 3910. So far as presently important, the statute is as follows: "When a personal injury is received by a servant or employee in the service or business of the master or employer, the master or employer is liable to answer in damages to such servant or employee, as if he were a stranger, and not engaged in such service or employment, in the cases following: * * *

"(5) When such injury is caused by reason of the negligence of any person in the service or employment of the master or employer, who has the charge or control of any signal, points, locomotive, engine, electric motor, switch, car, or train upon a railway, or of any part of the track of a railway."

As the plaintiff (appellee) asserts them, the circumstances attending his injury were these: Plaintiff was, when injured, actually engaged in the service of the defendant; this service required him to help "crank" a hand car operated by the defendant telegraph company, over the track of the Northern Alabama Railway Company, in the movement of the defendant's employees and materials used by it in the maintenance and repair of its telegraph lines along the railway's right of way; that one Wall was the foreman in charge and control of this hand car and of the employees on it; that within Wall's functions was the operation of the brake on the hand car; that when the hand car, which was then running about 12 miles an hour, reached a point on the track whence there was a downgrade stretch of track at a time when plaintiff and others theretofore engaged in "cranking" the hand car had released their hold on the handlebar, an approaching train was discovered, and without notice or warning Wall

[Western Union Telegraph Co. v. Howington.]

suddenly applied the foot brake, thereby rather abruptly dimin-
ishing the speed of the hand car and overbalancing plaintiff, who
was standing without guard or support with his back turned in
the direction the hand car was moving and from which the train
was then, at some distance, approaching; that the hand car had
to be removed to clear the track for the trains on the line; that
it was customary for the foreman in charge or control of the
hand car and operating the brake to give warning when he in-
tended to apply the brake; that the usual way of applying the
brake was not to suddenly clamp it down, but to "ease" it on so
as to gradually slow the car; that after plaintiff had been thus
thrown off his balance and was falling along with his effort to
regain his equilibrium Wall "eased" up on the brake, thus allow-
ing the car to "speed up" and overtake the plaintiff and collide
with him, derailing the car and seriously injuring him; and that
the distance between the hand car and the approaching train,
which was rounding a curve when it was discovered, was ample
in which to effect a stop of the hand car and to remove it from
the track without necessitating any sudden application of the
brakes in order to seasonably clear the track for that train.

(6) It is insisted for appellant that the provisions of the
fifth subdivision quoted can only apply "to protect employees of
the owner or operator of the railway against the peculiar hazards
of railroad operation, and has no application to the casual use
by a licensee or other person of the track of a railway upon busi-
ness not connected with the business of the owner or operator of
the railway."

The point taken has been considered with due regard to its
importance and to the forceful argument with which counsel for
appellant have undertaken to support it. The question is deter-
minable, necessarily, upon the construction of the statute (Code,
§ 3910, subd. 5, quoted before). This feature of our statute
establishes these elements and no others, in our opinion, as essen-
tial to its application or availability, viz:    (a) The existence of
the relation of master and servant between the defendant and
the person for whose injury the action is brought; (b) the person
injured must have been engaged, when the injury occurred, in
the discharge of duties under his employment; (c) his injury
must have been proximately caused by the negligence of another
person then in the service of the common master; (d) this other
person, then in the service of the common master, must have had

"the charge or control" of certain railway instrumentalities or agencies within the purview of subdivision 5; (e) the negligence of such person so authorized, proximately causing the injury, must have been with reference to some one or more of the railway instrumentalities or agencies over or about which the negligent employee had conferred upon him the authority described in the statutory terms "charge or control." We can find nothing in this feature of the statute that would warrant the conclusion that its effect was only visitable under circumstances which would authorize the affirmation that the defendant, the common master of the derelict servant and the injured person, was owner or was proprietor of a railway or was engaged in the operation of a railway, within the usual signifinance of that term. To so affirm would, we think, require the interpolation by judicial construction of a restrictive provision in the statute that is not to be found in it, one result of which would be to introduce this question into the inquiry, What was the business, the enterprise, in which the master was engaged or was pursuing in the employment of the instrumentalities or agencies described in the fifth subdivision? whereas the only question within the statute's contemplation, in this particular connection, is, Was the negligence to which the injury is ascribed predicated on the fault of a servant of the common master who had "charge or control" of the railway agencies or instrumentalities described in the fifth subdivision? At the very least, the chief effect of the statute was to avert the concluding result of the fellow-servant doctrine upon cases within its purview. This it could do; this it did accomplish, as was its intent, by appropriating for the definition of its rule circumstances which do not depend for their existence upon the wide or narrow purposes of the ultimate great or small object of the master in the master's use of the agencies or instrumentalities described in the fifth subdivision. In this particular connection the manifest intent of the lawmakers was satisfied when they defined the railway means upon or through which the servant's negligent act or omission operated to proximately cause the injury complained of.

In support of the contention before quoted from the brief of appellant, the following of our decisions are cited: *K. C., M. & B. R. R. v. Crocker*, 95 Ala. 412, 11 South. 262; *Ala. S. & W. Co. v. Griffin*, 149 Ala. 423, 42 South. 1034; *Woodward Iron Co. v. Curl*, 153 Ala. 215, 44 South. 969; *Pear v. Cedar Creek Mill Co.,*

156 Ala. 263, 47 South. 110; *Boggs v. Ala. Con. C. & I. Co.,* 167 Ala. 263, 52 South. 878, 140 Am. St. Rep. 28. Much of the argument finds its premise in expressions in the opinion in the *Griffin Case, supra,* as well as in the conclusion there given effect in respect of what service being then performed by the employee when injured was comprehended in the fifth subdivision of Code, § 3910. The *Curl Case* may be rightfully regarded as in line with its predecessor, the *Griffin Case.* As respects the *Pear Case, supra,* a constitutional quorum of the court did not reaffirm the pertinent doctrine of the *Griffin* and *Curl Cases.* The ruling in the *Griffin Case* was that a servant who was injured in consequence of negligence with respect to an instrumentality within the purview of the fifth subdivision cannot avail of its provisions unless he was, when injured, actually engaged in operating the master's railroad, even though he was, when injured, actually performing his duty to the master in another department of the master's service. The pertinent ruling in the *Griffin Case* and its successor was modified in the *Boggs Case, supra.* The modification there made resulted in this declaration: That if a servant's performance of his duties to his master subjected him to an injury, proximately caused by negligence of a co-employee within the purview of the fifth subdivision, against a recovery for which the defending master could assert the fellow-servant doctrine, the injured servant, or his personal representative, could avail of the protecting provisions of the fifth subdivision, even though the injured servant was otherwise actually engaged at the time in a service different from the operation of the master's railroad. It is entirely clear that the decision itself made in the *Boggs* and *Griffin Cases* afford no ground on which to rest the argument here made. Indeed, it is altogether probable that the contention for support in those cases is laid in descriptive expressions in those opinions and in quotations therein made, none of which were intended by this court to affirm that the provisions of the fifth subdivision had no application where, as here, the defending master was employing railway means or methods, but was not engaged in the business of operating a railroad. Certainly it was not the intent to declare that the provisions of the fifth subdivision were inapplicable, unavailable, unless the instrumentality or agency negligently causing the injury was being devoted by or for the owner or operator in the business of operating a railroad. The same observations may

be made with reference to statements in the opinion in the *Crocker Case, supra*. The expressions in all of our cases referring to the operation of railroads in connection with the provisions of the fifth subdivision had in contemplation the obvious fact that all of the agencies and instrumentalities described in the fifth subdivision are related to railways, and intend to benefit those servants who may be the subjects of negligently inflicted injuries through such agencies or instrumentalities.

The complaint is not subject to the demurrer taking the objection that the complaint or either count thereof sought to avail of the provisions of the fifth subdivision when the facts averred failed to show that the defendant owned or was engaged in the business of operating a railroad at the time plaintiff was injured. These considerations and the conclusion stated justify the court in refusing the general affirmative charge requested on that theory for the defendant.

(7-10) Counts 2 and 3 were both deficient in omitting to aver that the foreman in charge or control of the hand car knew, or should have known, that plaintiff was then in a position where a sudden application of the brake would probably result in causing him to lose his balance and fall.—*L. & N. R. R. Co. v. Bouldin*, 110 Ala. 185, 200, 20 South. 325. "Negligence is ordinarily predicated in terms of knowledge" (*Bruner v. Sellbach Ca.*, 133 Ky. 41, 117 S. W. 373, 19 Ann. Cas. 217, 219), or in the omission to perform a duty that, if performed with due diligence and care, would have afforded knowledge or given notice to the party alleged to be derelict. We find no ground of demurrer specifying, within the prescription of our statute (Code, § 5340), this particular objection to these counts. The eighth ground of the demurrer, which reads, "It is not averred or shown that said Wall knew that plaintiff had just stopped cranking said hand car," did not serve the necessary purpose of specifying this particular objection. The plaintiff was not required, as the quoted ground assumed, to aver knowledge on the part of Wall that plaintiff had ceased to crank the hand car, since a negligent breach of duty by Wall might have intervened and characterized Wall's unannounced act in the circumstances as negligent if it had been alleged that Wall's duty was to know or to exercise reasonable care to know the situation of plaintiff at the time—a situation likely to be converted from one of safety to one of danger by Wall's act in applying the brake as charged. However, there are

[Western Union Telegraph Co. v. Howington.]

appropriate grounds of demurrer specifying these additional faults in counts 2 and 3 :     (a) The failure to unequivocally aver, without aiding recourse to inference or conjecture, the foreman's duty, not alone his acts, with respect to the operation of the brake on the hand car which was averred to be in his charge or control, as well as with respect to the obligation to warn those on the car if he, in the performance of his duty, intended to stop or check the car; (b) the failure to unequivocally aver that at the time the negligent act or omission occurred and injury befell him the plaintiff was engaged in the discharge of his duty to his master.     In respect of the latter objection, lettered "b" above, as it relates to count 2, it is to be specially noted that in one place in the count it is averred to have been plaintiff's duty, along with other employees, "to crank or propel said hand car," and in another place therein it is alleged that at the time he was precipitated from the hand car he "had just stopped cranking said hand car," thus introducing into his pleading a contradiction of that which he was bound to allege in order to make his pleading good against aptly grounded demurrer, viz., that at the time he was injured he was then in the discharge of his duty to his employer. —S.-S. S. & I. Co. v. Chamblee, 159 Ala. 185, 188, 48 South. 664; Ga. Pac. R. R. Co. v. Propst, 85 Ala. 203, 205, 4 South. 711.

(11) There is no merit in the other grounds of the demurrer to counts 2 and 3.    The averment that Wall was "in charge or control" of the hand car conformed in that respect to the provisions of the fifth subdivision of the statute.    Both of the counts are in case, not in trespass, and hence do not undertake to join case and trespass in a single count.    If the complaint had not had the three faults we have mentioned, it would not, in our opinion, be subject to demurrer.    If, in fact, a sudden application of the brake, without warning to the employees on the hand car, was made by the foreman, and if this was necessary, because of the proximity of the approaching train, to seasonably stop and to remove the hand car from the track for the train's uninterrupted passage, that was defensive matter, not matter essential to be initially negatived in the plaintiff's pleading or in his evidence in chief.

In view of the retrial likely to occur, it is proper to say, on the evidence in this transcript, that the issues made by counts 2 and 3 and by the pleas of contributory negligence now in the record were due to be submitted to the jury for decision.

[Western Union Telegraph Co. v. Howington.]

Without affirming that the extract from the court's oral charge set forth in the thirty-third and thirty-fourth assignments of error was, when properly interpreted, an erroneous declaration of law, we do think, in view of its possible capacity to confuse the issue of negligence vel non on the part of the foreman, the statement should not be repeated, if another trial occurs.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD, SAYRE, and SOMERVILLE, JJ., concur.

GARDNER, J.— (dissenting).—This cause is reversed solely upon the supposed insufficiency of the averments of counts 2 and 3, which counts are set out in the report of the case. The two grounds of objection are treated in the majority opinion under designations " (a) " and " (b) ."

The ground of objection indicated as " (a) " is that the counts fail to "unequivocally aver * * * the foreman's duty, not alone his acts, with respect to the operation of the brake on the hand car," etc. As to count 3, the plaintiff has simply followed the statute, charging the injuries to the negligence of one Wall, who had charge or control of the operation of the hand car. Clearly the above ground of objection can have no reference to this count, although the majority opinion seems to proceed on the theory that it does. As to count 2, it likewise concluded in the language of the statute, but, in addition, describes more in detail the negligence of said Wall, as in suddenly and without warning · applying the brakes to the car, thus slackening the speed so abruptly as to throw plaintiff forward and off the car. The objection seems to be that, notwithstanding the averment of facts which clearly and unequivocally show that there rested on Wall the duty not to so negligently act as to thus seriously injure the plaintiff, this duty is not alleged in a formal manner; and upon such consideration the majority opinion would reverse the judgment. No authority is cited in support of this proposition; and I feel safe in the assertion that none can be found, rendered in modern times, which would require such strict formality when the facts averred show the duty plainly and unmistakably. Indeed, I have always understood that pleadings are to be construed according to the facts alleged. Such is the holding of this court

in *Rogers v. Brooks*, 99 Ala. 31, 11 South. 753; *L. & N. R. R. Co. v. Williams, infra*, 73 South. 548; and cases cited in 4 Mayf. Dig. 447.

Passing to ground of objection "(b)," it appears to be confined to count 2, which avers that at the time of the injury plaintiff was in the "employ of defendant in the active discharge of his duty as laborer or groundman, assisting in repairing * * * telegraph wires. * * * As a part of said repairing * * * defendant operated hand cars along the the track of said * * * railway, and was on said day operating a hand car for the purpose of carrying * * * employees as well as instruments, poles and wires, and at said time and place plaintiff, with other employees of defendant, * * * was riding on said hand car." This count then alleges that it was the duty of plaintiff, along with other employees, to crank or propel said hand car, but goes on to recite that at the time of the alleged negligent conduct of Foreman Wall plaintiff had just stopped cranking the hand car. It is this last expression that "plaintiff had just stopped cranking said hand car" which is held in the majority opinion to be fatal to the count, and this upon the theory that it is contradictory of the averment that at the time of the injury plaintiff "was in the discharge of his duty."

If this is sound reasoning, and the evidence should disclose that at the time of the accident plaintiff had just ceased cranking the car, he would not be entitled to recover. This would necessarily follow as a logical conclusion. The same reasoning would deny recovery for damages to the coal miner injured by some actionable negligence while in the mine, if it appeared that at the time of his injury his pick had momentarily rested by his side and was not at that very instant in actual use.

But the court does not hold that, if plaintiff was not engaged in cranking the car at the very moment of the accident, he could not recover. No such proposition is announced, and clearly the court holds the very contrary. The evidence of plaintiff himself discloses that at the time of his injury he was not cranking the car, nor were the others, for the reason that the car was going down a rather steep grade and had sufficient momentum without being propelled.

The opinion expressly states that the issues under counts 2 and 3 are for the jury's determination, and this notwithstanding the fact that plaintiff testified he was standing idle on the car,

looking to one side. So, of course, if it was the intention of the majority to hold that plaintiff was barred of recovery because he was not at the moment engaged in cranking the car, the opinion would have so stated, and it would have concluded that defendant was due the affirmative charge.

To hold that the expression in the count "defendant was not at the time cranking the car" is fatal to its sufficiency brings us inevitably to this situation: A case is presented where the plaintiff alleges in his complaint a fact which he testifies is the absolute truth, and which the court holds does not bar him of a right of recovery nor materialy affect his case; and yet the court at the same time says to the plaintiff that, because he did not allege this harmless truth in the second count of his complaint, the count is insufficient, and the judgment must be reversed. I respectfully submit that this presents an anomalous situation, a parallel of which I believe a search of the authorities will fail to disclose. The mere statement of the proposition should suffice for its refutation. The plaintiff was very seriously hurt, and his evidence tends to show that he has suffered permanent injuries.

All the meritorious questions arising on this trial are shown by this opinion to have been decided adversely to the appellant, and the record shows that the material issues were properly and fairly submitted to the jury's determination. The only error found in the record by the majority consists in the two questions above discussed as to counts 2 and 3. These counts speak for themselves, and to my mind appear to have been carefully prepared.

For my Brothers of the majority I have, of course, the highest respect and regard, but I have felt it my duty, in the exercise of a constitutional right, to record my earnest dissent, thus briefly stated, from the reversal of the cause upon such grounds, firmly believing, as I do, that this decision marks a decided step backward in the administration of justice.

THOMAS, J., concurs in the above dissenting opinion.